984 F.2d 349
 60 Fair Empl.Prac.Cas. (BNA) 1147,
60 Empl. Prac. Dec. P 41,991,
36 Fed. R. Evid. Serv. 1293
Mary J. SORENSEN, Plaintiff-Appellant,
v.
CITY OF AURORA, Defendant-Appellee,
John Speed, in his official and individual capacity, Mark
Wildey, in his official and individual capacity,
Radford Moore, in his official and
individual capacity, Defendants.
 No. 91-1348.
 United States Court of Appeals,
Tenth Circuit.
 Jan. 19, 1993.
 
 1
 Richard C. LaFond, Arnold M. Woods, Law offices of Richard LaFond, and Richard J. Banta, Denver, CO, for plaintiff-appellant.
 
 
 2
 Peter Ruben Morales, Charles H. Richardson, Christopher K. Daly, of the Office of Aurora City Atty., Aurora, CO, for defendant-appellee.
 
 
 3
 BALDOCK and EBEL, Circuit Judges, and LUNGSTRUM, District Judge.[1]
 
 
 4
 LUNGSTRUM, District Judge.
 
 
 5
 On February 23, 1990, plaintiff-appellant Mary J. Sorensen ("plaintiff") filed a complaint with the U.S. District Court for the District of Colorado against defendant-appellee City of Aurora ("City") and others alleging that defendants had violated Title VII, 42 U.S.C. § 2000(e), et seq., and 42 U.S.C. § 1983 in terminating her employment as a fire dispatcher. The City filed a motion for summary judgment as to plaintiff's Section 1983 claims, which was granted by the District Court on February 8, 1991, 1991 WL 17775. The dismissal also included all individually named defendants.
 
 
 6
 Trial to the court on plaintiff's two remaining claims, concerning alleged sexual discrimination and retaliation by the City, was had on July 22-24, 1991. On September 10, 1991, the district court issued its findings of fact and conclusions of law in a Memorandum Opinion and Order, 1991 WL 183897, ruling (1) that plaintiff had not met her burden in establishing a prima facie case of sexual discrimination, and (2) that plaintiff had established a prima facie case of retaliation, but that the City had articulated valid, nondiscriminatory reasons for discharging her and plaintiff had failed to prove that the City's articulated reasons for discharging her were pretextual. Accordingly, the district court entered final judgment for the City in an Amended Judgment filed September 11, 1991. We affirm the findings of the district court.
 
 
 7
 "A finding of intentional discrimination, or a finding of no intentional discrimination, is subject to the clearly erroneous standard of review." Ortega v. Safeway Stores, Inc., 943 F.2d 1230, 1237 (10th Cir.1991). A finding of fact is clearly erroneous only "if it is without factual support in the record, or if the appellate court, after reviewing all the evidence, is left with the definite and firm conviction that a mistake has been made." LeMaire By and Through LeMaire v. United States, 826 F.2d 949, 953 (10th Cir.1987). "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. Id. at 573-74, 105 S.Ct. at 1511-12; Ortega v. Safeway Stores, 943 F.2d 1230, 1237 (10th Cir.1991).
 
 
 8
 Plaintiff asserts that the district court erred (1) in finding that plaintiff failed to prove discriminatory motive or intent as required by her Title VII disparate treatment claim; (2) in finding that plaintiff failed to prove retaliatory animus as required by her Title VII retaliation claim; and (3) in excluding certain witness testimony offered by plaintiff, which plaintiff contends would have shown discriminatory animus.
 
 Title VII Sex Discrimination Claim
 
 9
 When alleging disparate treatment on the basis of sex, the plaintiff must prove by a preponderance of the evidence that the defendant had a discriminatory motive or intent. Watson v. Fort Worth Bank and Trust, 487 U.S. 977, 986, 108 S.Ct. 2777, 2784, 101 L.Ed.2d 827 (1988). This may be done either by direct proof of discriminatory intent, or, more commonly, through the "series of shifting evidentiary burdens that are 'intended progressively to sharpen the inquiry into the elusive factual question of intentional discrimination.' " Id. (quoting Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 255 n. 8, 101 S.Ct. 1089, 1095 n. 8, 67 L.Ed.2d 207 (1981)); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).
 
 
 10
 Thus, pursuant to the shifting burden of proof scheme of McDonnell Douglas and subsequent cases, plaintiffs must first establish a prima facie case of discrimination. Ortega v. Safeway Stores, Inc., 943 F.2d 1230, 1236 (10th Cir.1991). Once plaintiffs establish a prima facie case of discrimination, "the burden of production shifts to defendants to rebut the presumption of discrimination." Drake v. City of Fort Collins, 927 F.2d 1156, 1160 (10th Cir.1991) (citing Carey v. United States Postal Service, 812 F.2d 621, 624 (10th Cir.1987)). A defendant can rebut that presumption by producing "some evidence that it had legitimate, nondiscriminatory reasons for the decision." Watson v. Fort Worth Bank and Trust, 487 U.S. 977, 986, 108 S.Ct. 2777, 2784, 101 L.Ed.2d 827 (1988). Its articulation of those reasons must be "clear and specific." Drake, 927 F.2d at 1160.
 
 
 11
 If the defendant succeeds in rebutting the presumption of discrimination raised by the plaintiff's prima facie case, then the inquiry returns, as in any civil case, to whether or not the plaintiff has met its burden of persuasion. In that event, the plaintiff must prove by a preponderance of all the evidence in the case that the legitimate reasons offered by the defendant were a pretext for discrimination. Watson, 487 U.S. at 986, 108 S.Ct. at 2784.
 
 
 12
 The Supreme Court has cautioned that this shifting burden of proof scheme is only intended to assist in marshalling and presenting relevant evidence. "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Watson v. Fort Worth Bank & Trust, 487 U.S. at 986, 108 S.Ct. at 2784 (quoting Texas Dept. of Community Affairs v. Burdine, 450 U.S. at 253, 101 S.Ct. at 1093). Further, the ultimate question in a Title VII disparate treatment case is whether the defendant intentionally discriminated against the plaintiff. United States Postal Service Bd. of Governors v. Aikens, 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983). Thus, when such a case is fully tried, as here, we need only consider that ultimate question--whether plaintiff proved that the defendant intentionally discriminated against her. The subsidiary steps in the McDonnell Douglas proof scheme become irrelevant. See Ortega v. Safeway Stores, Inc., 943 F.2d 1230, 1237 (10th Cir.1991); United States Postal Serv. Bd. of Governors v. Aikens, 460 U.S. at 715, 103 S.Ct. at 1482 ("Where the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant"); McAlester v. United Air Lines, Inc., 851 F.2d 1249, 1260 (10th Cir.1988) ("[T]his court need not review whether McAlester made a prima facie case where the district court did not dismiss McAlester's claim on United's motion at the conclusion of McAlester's case."); Pitre v. Western Elec. Co., 843 F.2d 1262, 1266 (10th Cir.1988) ("Once the district court makes the ultimate determination as to whether the employer violated [Title VII], its legal conclusions in regard to the first two stages of evaluating the evidence become irrelevant on appeal.").
 
 
 13
 The crux of plaintiff's sex discrimination claim is a comparison of the treatment of her and the treatment of Mr. Mann for their handling of the Hanlon call.[2] Plaintiff was eventually terminated for her actions regarding the call while Mann did not receive discipline. Plaintiff contends that Mann had shared responsibility and some degree of culpability for the alleged errors in the handling of the Hanlon call. Plaintiff also contends that the district court failed to properly analyze her sex discrimination claim, improperly categorizing it as a sexual harassment claim.
 
 
 14
 We cannot conclude that the district court's ultimate finding that plaintiff failed to prove that the City had a discriminatory motive or intent in discharging the plaintiff was clearly erroneous. A review of the district court's Memorandum Opinion and Order reveals that there was no confusion by the district court as to the claim presented by plaintiff. The district court begins its analysis of plaintiff's disparate treatment claim with a quotation of the relevant statutory language, proceeds through a proper description of the applicable legal standards and an analysis of the evidence that it found might support plaintiff's disparate treatment claim, and then concludes specifically that plaintiff was not "a victim of disparate treatment." The district court in its Memorandum Opinion and Order does twice incorrectly refer to plaintiff's claim as one for sexual harassment. However, we find it apparent from the evidence presented to the district court regarding plaintiff's claim and the district court's use of the applicable legal standards for the disparate treatment claim in its Memorandum Opinion and Order that the district court properly analyzed plaintiff's claim under the applicable standards for a disparate treatment sex discrimination claim.
 
 
 15
 Similarly, we find no clear error in the district court's failure to find plaintiff and Mann to be similarly situated employees. The burden is on plaintiff to demonstrate that plaintiff and Mann were similarly situated employees. Jones v. Gerwens, 874 F.2d 1534, 1540 (11th Cir.1989). Plaintiff admitted in her brief, and in oral argument before this court, that she had primary responsibility for the Hanlon call. An internal affairs investigation directed by John C. Driscoll determined that plaintiff's confusion as to Hanlon's location at the mall had caused her to commit several serious errors, including failure to ask any questions from the EMD protocol cards; failure to determine that the Hanlon call was an injury type call; an inappropriate delay of dispatch; and an inappropriate dispatch. Plaintiff argues that the fact the dispatchers used a team concept and that Mann was involved with the Hanlon call created a shared responsibility and some degree of culpability on Mann's part for the errors in the handling of the Hanlon call. However, the City presented evidence indicating Mann's role in the call to be less than that claimed by plaintiff. Based upon the record before us, we do not find the district court's determination that plaintiff was not a victim of intentional discrimination to be clearly erroneous.
 
 Title VII Retaliation Claim
 
 16
 The general approach to Title VII suits set out in McDonnell Douglas is also applicable to retaliation claims. Burrus v. United Telephone Co. of Kansas, Inc., 683 F.2d 339, 343 (10th Cir.1982). A plaintiff must first establish a prima facie case of retaliation. If a prima facie case is established, then the burden of production shifts to the defendant to produce a legitimate, nondiscriminatory reason for the adverse action. If evidence of a legitimate reason is produced, the plaintiff may still prevail if she demonstrates the articulated reason was a mere pretext for discrimination. The overall burden of persuasion remains on the plaintiff. Id.
 
 
 17
 The district court concluded that plaintiff did establish a prima facie case of retaliation. The court further found that the City articulated legitimate, nondiscriminatory reasons for discharging plaintiff and that plaintiff did not demonstrate by credible evidence that the articulated reasons were pretextual. The district court concluded that the City "discharged plaintiff for valid, nondiscriminatory reasons, i.e. undue delay in answering calls, erratic performance, leaving her position on the console unattended, excessive tardiness, and failure to deal effectively with emergency dispatch--a function critical to the lives and safety of citizens in the community."Plaintiff claims that various alleged procedural irregularities involving the internal investigation which resulted in plaintiff's dismissal show a clear, organized attempt to "get rid of" plaintiff and that in light of these alleged procedural irregularities the City's proffered reasons for terminating plaintiff cannot be considered worthy of belief. Among the procedural irregularities specified by plaintiff are the fact that the original internal affairs file, along with one of the working files, turned up missing, the fact that the original master tape of the Hanlon call was taped over, the fact that the audit trail regarding the call was shredded, and the fact that Chief Speed refused to meet with plaintiff's attorney during the investigation. Plaintiff also claims that for the period following her discrimination complaint in 1981 through her termination she was subjected to discrimination and unfair treatment. Plaintiff claims this discriminatory treatment included reprimands for reasons that ranged from "trivial to absurd," being unfairly subjected to weekly evaluations, and being put on probationary status.
 
 
 18
 We see no clear error in the district court's finding that plaintiff failed to show that the City's articulated nondiscriminatory reasons for discharging her were pretextual. The record demonstrates that plaintiff had a history of erratic performance on the job. The district court heard all of the evidence before it with respect to plaintiff's allegations of procedural irregularities and prior discriminatory conduct on the part of the City and determined that plaintiff had not proven that the stated reasons for her discharge were pretextual. It is true that plaintiff and the City have offered conflicting testimony on many of these issues. However, where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). Our independent review of the record indicates ample evidence supporting the trial court's determination that the plaintiff was discharged for valid, nondiscriminatory reasons, and that plaintiff failed to prove those stated reasons were pretextual. Because our review of the record does not leave us with a "definite and firm conviction that a mistake has been committed," we affirm the finding of the district court on plaintiff's retaliation claim. See Cunico v. Pueblo School Dist. No. 60, 917 F.2d 431, 436 (10th Cir.1990).
 
 Evidentiary Rulings
 
 19
 A trial court's decision on whether to admit or exclude evidence may not be disturbed on appeal unless the appellate court determines that the district court abused its discretion. United States v. Alexander, 849 F.2d 1293, 1301 (10th Cir.1988). This standard is only met if the appellate court has "a definite and firm conviction that the lower court made a clear error in judgment or exceeded the bounds for permissible choice under the circumstances." United States v. Ortiz, 804 F.2d 1161, 1164 n. 2 (10th Cir.1986).
 
 
 20
 Plaintiff argues that the district court abused its discretion in refusing to allow Leonard Sickler, a close friend of plaintiff's, to testify that Deputy Chief Melvin Morley made a comment to Sickler that "we've got your big-titted girlfriend this time and we are going to get her fired." The district court found this statement was inadmissible hearsay. Plaintiff argues that this evidence should have been admitted under Fed.R.Evid. 801(d)(2)(D) as a statement of a party's agent concerning a matter within the scope of his agency or employment and made during the existence of the relationship. Upon our review of the record, we find that plaintiff failed to demonstrate that Morley was an agent acting within the scope of his agency when the alleged statement was made and that the district court did not abuse its discretion in disallowing the testimony.
 
 
 21
 Plaintiff also asserts that the district court abused its discretion by refusing to admit evidence that other female employees of the City had complained of discrimination and retaliation in the Fire Department and that Chief Speed had been disciplined about such complaints. Plaintiff identifies the witnesses who would have testified regarding these alleged complaints as Karen Mystowski, a past employee of the City, and John Pazour, the Aurora City Manager at the time of the trial (but not at the time of plaintiff's termination).
 
 
 22
 As to Ms. Mystowski, we find that plaintiff failed to establish a sufficient factual record for us to consider the propriety of the exclusion of her testimony. Plaintiff failed to make an offer of proof as to the excluded testimony or offer any specific objection to its exclusion. Fed.R.Evid. 103(a)(1) states in pertinent part that "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and ... a timely objection ... appears of record, stating the specific ground of objection." Plaintiff's failure to make a proper objection or offer of proof at the time of trial effectively precludes us from considering this issue on appeal.
 
 
 23
 The trial record regarding the proffered testimony of Mr. Pazour is also confusing. We find that plaintiff failed to adequately establish the relevancy of Mr. Pazour's proffered testimony or that plaintiff was substantially prejudiced by its exclusion. Under these circumstances we find that the district court's refusal to admit Mr. Pazour's proffered testimony was well within the district court's discretion. See Schrand v. Federal Pacific Elec. Co., 851 F.2d 152, 156 (6th Cir.1988) (reversing district court's admission of prior discriminatory conduct based on the lack of evidence "from which the alleged statements of the witnesses could logically or reasonably be tied to the decision to terminate [the plaintiff].").
 
 
 24
 AFFIRMED.
 
 
 
 [1]
 The HONORABLE JOHN W. LUNGSTRUM, United States District Judge for the District of Kansas, sitting by designation
 
 
 [2]
 On May 15, 1987, a Mr. Larry Hanlon made an emergency call to the fire department. The call involved a woman who had either fallen into or attempted to drown herself in a mall fountain. Plaintiff, who was on duty as a fire dispatcher at the time, took the call. Curt Mann was also on duty as a fire dispatcher at the time the call was made, as was police dispatcher Mary Kay West. The actions taken by plaintiff and Mann regarding the call and their ultimate responsibilities for the call are much in dispute by the parties