Mario **LOPEZ**, Plaintiff,

v.

**SCHWAN'S SALES ENTERPRISES, INC., Defendant.**

**Civ. A. No. 92–1342–FGT.**

United States District Court, D. Kansas.

Jan. 31, 1994.

---

Jim Lawing, Wichita, KS, for plaintiff.

Barbara Scott Girard, Alan L. Rupe, Todd N. Tedesco, Rupe & Girard Law Offices, P.A., Wichita, KS, for defendant.

### MEMORANDUM AND ORDER

THEIS, District Judge.

Plaintiff, Mario Lopez, brought this action under Title VII of the Civil Rights Act of 1964. Plaintiff alleges that he was terminated from his position as a delivery driver for defendant Schwan's Sales Enterprises, Inc. ("Schwan's"), because he is Mexican–American. The matter is before the court on defendant's motion for summary judgment. (Doc. 57).

### I. Facts

Schwan's is a retail frozen food company which delivers to customers' homes. On February 2, 1988, plaintiff interviewed for a position as a delivery driver/salesperson with Schwan's. The interview was conducted by Roland Graber, the Sales Manager of the Garden City, Kansas, office, and Jim Brace, the Division Manager and defendant's highest official in Kansas. During the interview, Brace asked plaintiff how he would react if a customer refused to purchase from him because he was Mexican–American. Plaintiff responded that he would react in a professional manner, and he believed he could solicit other customers to make up for any sales lost to discrimination. Plaintiff alleges that Brace seemed preoccupied with plaintiff's ethnicity and mentioned during the interview that he did not have much experience dealing with Mexicans. According to Brace and Graber, they were very impressed with plaintiff's professionalism during the interview.

Graber hired plaintiff on March 7, 1988, to begin on-the-job training. Plaintiff was to work out of the Garden City depot. Plaintiff was moved from the training program rather quickly because a permanent route became available. The route was offered to plaintiff and plaintiff accepted. Plaintiff claims he received inadequate training, and the route offered was undesirable. The driver who had previously handled the route assigned to plaintiff had left it in disarray. Plaintiff and Graber worked to reorganize the route, and plaintiff was able to reassure customers that they would receive dependable service. Plaintiff returned the route to profitability. A few months after plaintiff began his route, however, customers began to complain about the service they were receiving. These customers complained that plaintiff was rude to them when they placed small or no orders, that plaintiff was pushy and overbearing, that plaintiff informed them there was a $20–$25 minimum purchase requirement, and that plaintiff told customers it was not worth his time to stop if they did not place large orders. Graber gave plaintiff a verbal warning about this conduct and told plaintiff to cease telling customers there was a minimum purchase requirement.

In June of 1989, the company split the Garden City territory and added a depot in Liberal, Kansas. The routes plaintiff had been driving were to become Liberal routes. However, because plaintiff wished to remain in Garden City, plaintiff was offered a different route when it became available. Plaintiff accepted the new route. Again, the company began to receive complaints about plaintiff's rudeness and pushiness. Some customers ceased doing business with Schwan's. Others refused to answer the door when plaintiff came. Plaintiff was given a written reprimand and was informed that the failure to cease in the unacceptable conduct would result in suspension or termination.

Graber did not receive complaints for a few weeks, but then customers began to complain again. According to Graber, although plaintiff had a good sales record, the Schwan's reputation had suffered enough because of plaintiff's behavior. Plaintiff was terminated on December 22, 1989.

For a period of time while plaintiff worked his first route, Graber rode with plaintiff on his route. It happened that during this time Schwan's was running a special on hams and lobster tails. Each driver carried a green card which showed the price calculations for the special items. At the home of one customer, plaintiff was trying to figure the price for a number of hams. Graber asked plaintiff whether he had his green card. Graber testified that he immediately realized how this must have sounded. Plaintiff answered that he must have his green card or he would not be working. The customer expressed mock surprise that Graber had never asked plaintiff this question before. All three laughed at the time. Plaintiff characterizes the incident as a joke by Graber and testified that he laughed because he did not want to make a scene in the presence of the customer.

Plaintiff has complained about other treatment, including that he and his wife were snubbed at a company banquet by Brace and others, and that his truck did not receive adequate or timely service. At the time of plaintiff's employment with Schwan's, there were no other minority employees at the Garden City depot and no female delivery drivers.

Plaintiff asserts that the company received complaints about other drivers, but Graber took no steps to discipline these drivers. Plaintiff's wife testified that when she visited the depot, she often saw messages to other drivers concerning customer complaints, such as a driver's failure to make a stop or to leave items ordered, a driver's repeated failure to use the back door as requested, and a driver's coming too late in the evening. According to Graber, he handles a minor infraction by leaving a message on the driver's clipboard and discussing the matter with the driver. If the infractions continue, Graber then reprimands the driver and makes a written record. According to Graber, the types of infractions Mrs. Lopez described were minor. However, Graber believed plaintiff's conduct—misrepresenting company policy to customers and rudeness—constituted more serious violations of company policy and deserved greater disciplinary actions, particularly in light of the fact that the conduct. continued after verbal and written warnings.

Finally, plaintiff contends that his selling techniques did not violate company policy. Plaintiff notes that he was rewarded for his good sales record. It is undisputed that plaintiff had one of the best sales records at the Garden City depot. In fact, had plaintiff not been terminated, he would have received the President's Sales Award. Plaintiff further states that Graber told him that he should average $20–$25 per stop and that he should not bother soliciting customers who would not become regulars. Plaintiff testified that the first time Graber discussed customer complaints with him, Graber told plaintiff that he understood what plaintiff was trying to do, but that he should take a different approach.

The record contains several letters from Schwan's customers complaining about plaintiff's service. Some of these customers stated that they would no longer allow plaintiff in their homes, and one canceled Schwan's service altogether. Plaintiff does not deny these customers complained. Plaintiff does contend that he was not allowed to respond

**1444**

to the complaints, particularly those that immediately preceded his termination. Furthermore, plaintiff denies some of the customers' allegations.

## II. Summary Judgment Standards

The court is familiar with the standards governing the consideration of a motion for summary judgment. The Federal Rules of Civil Procedure provide that summary judgment is appropriate when the documentary evidence filed with the motion "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A principal purpose "of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses...." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The court's inquiry is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

The burden at the summary judgment stage is similar to the burden of proof at trial. The court must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact on its claim(s). Rule 56, however, imposes no requirement on the moving party to "support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323, 106 S.Ct. at 2553 (emphasis in original). Once the moving party has properly supported its motion for summary judgment, the nonmoving party may not rest upon mere allegations or denials, but must set forth specific facts showing a genuine issue for trial, relying upon the types of evidentiary materials contemplated by Rule

56. Fed.R.Civ.P. 56(e). Each party must demonstrate to the court the existence of contested facts on each claim it will have to prove at trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. The court reviews the evidence on summary judgment under the substantive law and based on the evidentiary burden the party will face at trial on the particular claim. *Anderson*, 477 U.S. at 254, 106 S.Ct. at 2513.

## III. Plaintiff's Title VII Claim

Title VII of the Civil Rights Act of 1964 makes it an unlawful employment practice for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Plaintiff asserts that Schwan's violated Title VII by discharging him because he is Mexican–American.

When alleging disparate treatment, the plaintiff must prove by a preponderance of the evidence that the defendant had a discriminatory motive or intent. *Sorensen v. City of Aurora*, 984 F.2d 349, 351 (10th Cir. 1993). This may be done either by direct proof of discriminatory intent or more commonly through the well-established burden-shifting format. *Id.* at 351–52.

Plaintiff presented no direct evidence of discriminatory motive or intent on the part of defendant. Analysis of the plaintiff's claims under Title VII thus begins with the burden-shifting format set forth in *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). At step one, the plaintiff is required to prove a prima facie case of discrimination. Once the plaintiff has established a prima facie case, the burden of production shifts to the defendant to rebut the presumption of discrimination. The defendant may rebut the presumption by articulating some legitimate, nondiscriminatory reason for the employment decision. If the defendant succeeds in rebutting the presumption of discrimination raised by the prima facie case, the inquiry returns to whether or not the plaintiff has

met her burden of persuasion. Thus, at step three, the plaintiff must prove by a preponderance of all the evidence that the reasons offered by the defendant were a pretext for discrimination. *See Sorensen,* 984 F.2d at 352; *EEOC v. Flasher Co.,* 986 F.2d 1312, 1316 (10th Cir.1992). The presumption in plaintiff's favor that arose from the establishment of a prima facie case drops from the case. *Flasher Co.,* 986 F.2d at 1316.

■ The plaintiff can prevail either directly, by proving that the employer acted with a discriminatory motive, or indirectly, by showing that the stated reason for the employment action was a pretext for unlawful discrimination. *Id.* at 1317. The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. *St. Mary's Honor Center v. Hicks,* —— U.S. ——, ——, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993). *See also Sorensen,* 984 F.2d at 351.

■ In order to set forth a prima facie case for discriminatory discharge, a plaintiff must establish (1) that he is a member of a protected class, (2) that he was qualified for the position he held, (3) that he was terminated despite his qualifications, and (4) that his position remained open and his employer sought applications from people no more qualified than the plaintiff. *Trujillo v. Grand Junction Regional Ctr.,* 928 F.2d 973, 977 (10th Cir.1991).

■ In this case, the defendant contends that plaintiff has not established a prima facie case of discrimination. Defendant concedes that plaintiff is a member of a protected class. However, defendant argues that because plaintiff was unable to maintain good customer relations, he was not qualified as a delivery driver, and thus, fails to meet the second and third elements of a prima facie case. The court disagrees with defendant's argument. A plaintiff can sufficiently establish his qualifications in making a prima facie case by his own testimony that his work was satisfactory even when the employer disputes the testimony or by showing that he continued to possess the same objective qualifications as when he was hired. *DeVoe v. Medi–*

*Dyn, Inc.,* 782 F.Supp. 546, 557 (D.Kan.1992). The plaintiff has met that burden in this case. Defendant's justifications for terminating plaintiff's employment are better addressed at steps two and three of the burden shifting scheme. *Id.*

■ The defendant has met its step two burden of identifying a legitimate nondiscriminatory reason for terminating plaintiff's employment. Defendant contends that plaintiff did not maintain good customer relations and violated company policy by telling customers that there was a minimum purchase requirement. Defendant supports this argument with copies of letters received from customers complaining about the service received from plaintiff. Defendant also submits the affidavit of Roland Graber, plaintiff's supervisor, who recounts complaints he received over the phone. Defendant thus has met its step two burden.

■ The burden, therefore, shifts back to the plaintiff to establish a genuine issue of fact as to whether the defendant's proffered reason for terminating him is a pretext for discrimination. Plaintiff does not dispute the authenticity of the letters submitted by defendant. However, he does dispute Graber's characterization of the telephone complaints. Moreover, plaintiff contends he was not given an adequate chance to respond to the complaints against him, although he admits that he received lesser forms of discipline before being terminated. He denies much of the conduct the customers allege and asserts that rather than being rude, he was following company policy in trying to "sell" to customers.

■ As a further argument for pretext, plaintiff asserts that other drivers (none of whom was a minority) received customer complaints, but were not terminated. Defendant counters that the other drivers' complaints were not concerning rudeness to customers and misrepresenting that Schwan's had a minimum purchase requirement. The other complaints include failure to make a stop at a customer's home, failure to leave the correct items, or failure to use the back door as requested. According to Graber, these were minor infractions and were thus

handled by speaking to the drivers rather than imposing formal discipline. Graber testified that the only complaints he received that were considered major were those against plaintiff. However, there is no evidence that the categories of major and minor complaints are any more than Graber's subjective, after-the-fact characterization. Thus, there is a genuine issue whether plaintiff was treated differently from similarly situated drivers. Although a plaintiff must prove a discriminatory motive, the fact of differing treatment of minorities and non-minorities may imply a discriminatory motive. *Payne v. General Motors Corp.*, 731 F.Supp. 1465, 1470 (D.Kan.1990).

In addition to evidence of disparity in discipline, plaintiff has asserted several instances of what he considers inferior treatment because of his national origin. The "green card" incident described above does not further plaintiff's claim because the only evidence shows that Graber's asking for plaintiff's green card had nothing to do with his national origin or his work status. However, plaintiff alleges other facts—including Jim Brace's preoccupation with plaintiff's national origin during his interview—which are more helpful to plaintiff's claim of discrimination.

■ Where intent is at issue, the court should grant summary judgment only with great caution. *DeVoe*, 782 F.Supp. at 557 (citing *Schwenke v. Skaggs Alpha Beta, Inc.*, 858 F.2d 627, 628 (10th Cir.1988)). Although the defendant has established a legitimate nondiscriminatory reason for terminating plaintiff's employment, the plaintiff has established genuine issues of fact regarding pretext that preclude the entry of summary judgment. Accordingly, the defendant's motion for summary judgment is denied.

**IT IS BY THIS COURT THEREFORE ORDERED** that defendant's motion for summary judgment (Doc. 57) is hereby denied.