**Deanne MAGRUDER, Plaintiff,**

v.

**Marvin RUNYON, Postmaster General, United States Postal Service, Defendant.**

**Civ. A. No. 92–1506–MLB.**

United States District Court, D. Kansas.

Feb. 17, 1994.

---

Jim Lawing, Wichita, KS, for plaintiff.

Emily B. Metzger, Office of U.S. Atty., Wichita, KS, for defendant.

## MEMORANDUM AND ORDER

BELOT, District Judge.

This case comes before the court on defendant's motion for summary judgment, pursuant to Fed.R.Civ.P. 56. (Doc. 18)[1]

Magruder is a 34 year old woman who was employed by the United States Postal Service as a mailhandler. On December 11, 12, and 20, 1990, she forged the signature of Supervisor Glenda Keleher on timekeeping cards[2] and submitted the cards to the Postal Service prior to the end of her work shift. Magruder was interviewed by Postal Service Inspectors on January 24, 1991. She told the inspectors that she submitted the timekeeping cards to her supervisor for approval, and denied signing the supervisor's name on the form. Following the interview, Magruder changed her story and told Tour Superintendent Pauline Smith that she had signed Keleher's name to the timekeeping forms and did not tell the inspectors what she had done. Magruder informed Smith that she needed out early because of a sick child at home.

The Postal Service issued a Disciplinary Action Proposal on January 29, 1991, for Magruder's removal from her employment. The removal was recommended by Sharron Shaw. A formal letter of termination was issued on February 2, 1991. The final reviewing authority was Manuel Arguello. Neither Shaw nor Arguello ever made any derogatory comments about Magruder's sex. Magruder's termination became effective on March 9, 1991.

On January 29, 1991, Magruder informed General Supervisor Rex Lawrence that she was seeking alcohol treatment. Prior to January 29, 1991, Magruder had not informed anyone at the Postal Service that she was having problems with alcohol. She began

---

1. The court also has considered the following memoranda: Docs. 19, 26, 29, 31, 32 and 33 and the attachments thereto.

2. Postal Service Form 1260.

treatment for chemical dependency on an outpatient basis on February 2, 1991, and continued treatment through March 22, 1991.

Magruder simultaneously pursued two administrative avenues of relief from the Postal Service's decision. The first avenue pursued by Magruder was a union grievance. Magruder made several contentions: (1) her termination was punitive rather than corrective in violation of the union agreement; (2) she lacked confidence in herself and mistrusted management; (3) she did not "cheat" the Postal Service; (4) other employees have forged documents and no action was taken against them; (5) her actions were committed because she suffered from Post Traumatic Stress Disorder and because of addiction to alcohol and drugs. On March 27, 1991, her grievance was denied at the local level. An appeal was taken before an arbitrator who held a hearing in September 1991. On November 15, 1991, the arbitrator issued a written decision upholding denial of the grievance.

■ The second avenue was EEO. In her initial (informal) complaint, Magruder claimed sex discrimination based on disparate treatment arising out of two incidents when male employees allegedly committed similar offenses but were not fired and retaliation for having filed a prior EEO complaint. When the informal complaint was not resolved favorably, Magruder filed a formal EEO complaint. Her allegations of discrimination were similar to those made in her informal complaint with the exception of discrimination because of handicap (alcoholism), which was added. In May 1992, Magruder's EEO complaint was heard by a Postal Service Administrative Law Judge. Magruder was represented by the same attorney who represents her in this action. In a "recommended decision" issued on June 2, 1992, the Administrative Law Judge recommended findings of sex and handicap discrimination and no finding of reprisal. However, the Administrative Law Judge's recommended

decision was not accepted and by a Final Agency Decision dated September 10, 1992, the Postal Service denied all relief.[3]

Magruder commenced the present suit on October 22, 1992. She alleged that the defendant had discriminated against her on the basis of sex, in violation of Title VII, 42 U.S.C. § 2000e *et seq.*, and had also discriminated against her on the basis of a handicap, in violation of the Rehabilitation Act, 29 U.S.C. § 791 *et seq.* These claims were restated in the pre-trial order (Doc. 20) along with a claim that the defendant failed to follow the requirements of the Rehabilitation Act prior to plaintiff's termination.

### Standards for Summary Judgment

■ Rule 56(c) of the Federal Rules of Civil Procedure directs the entry of summary judgment in favor of the party who "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A principal purpose "of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses...." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The court's inquiry is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). "Entry of summary judgment is mandated, after an adequate time for discovery and upon motion, against a party who 'fails to make a showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Aldrich Enters., Inc. v. United States,* 938 F.2d 1134, 1138 (10th Cir.1991) (quoting *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552). Summary

---

**3.** At several places in her memoranda, Magruder makes reference to the ALJ's "recommended decision" and seems to suggest that the decision has some preclusive effect on the issues in this case. See, e.g., Doc. 26, pp. 7–8. No authority is cited, however. In this Title VII case, the

court declines to give preclusive effect either to the ALJ's "recommended decision" or to the Final Agency Decision which refused to adopt the ALJ's "recommended decision." *University of Tennessee v. Elliott,* 478 U.S. 788, 796, 106 S.Ct. 3220, 3225, 92 L.Ed.2d 635 (1986).

judgment is inappropriate, however, if there is sufficient evidence on which a trier of fact could reasonably find for the nonmoving party. *Prenalta Corp. v. Colorado Interstate Gas Co.*, 944 F.2d 677, 684 (10th Cir.1991).

■■■ The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact by informing the court of the basis for its motion. *Martin v. Nannie and the Newborns, Inc.*, 3 F.3d 1410, 1414 (10th Cir.1993). This burden, however, does not require the moving party to "support its motion with affidavits or other similar materials *negating* the opponent's claim." *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553. (emphasis in original). Once the moving party properly supports its motion, the nonmoving party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Muck v. United States*, 3 F.3d 1378, 1380 (10th Cir.1993). The court reviews the evidence in a light most favorable to the non-moving party, *e.g., Thrasher v. B & B Chemical Co., Inc.*, 2 F.3d 995, 996 (10th Cir.1993), under the substantive law and the evidentiary burden applicable to the particular claim. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513.

■■■ Summary judgment is ordinarily inappropriate where an individual's state of mind and intent are implicated. Nevertheless, summary judgment is equally applicable to Title VII cases when the appropriate standards are met, *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.), *cert. denied*, 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985). Summary judgment also may be appropriate when the plaintiff presents no evidence of motive and intent in support of her position. *Munson v. Friske*, 754 F.2d 683, 690 (7th Cir.1985).

### Title VII Claim

■■■ Magruder makes a claim of disparate treatment[4] under Title VII, which prohibits discrimination on the basis of race, sex, religion, and national origin by an employer. 42 U.S.C. § 2000e. When alleging disparate treatment on the basis of sex, the plaintiff must prove by a preponderance of the evidence that the defendant had a discriminatory motive or intent. *Sorensen v. City of Aurora*, 984 F.2d 349, 351 (10th Cir. 1993) (Citation omitted). Under the shifting burden of proof scheme outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1971), a plaintiff must first establish a *prima facie* case of discrimination. *Id.* at 352. To establish a *prima facie* case of discrimination, Magruder must show: (1) that she is a female; (2) that she was discharged for violating a work rule; (3) that similarly situated male employees who violated the same rule were treated differently than she was. *McAlester v. United Air Lines, Inc.*, 851 F.2d 1249, 1260 (10th Cir.1988). If the plaintiff establishes a *prima facie* case of discrimination, "the burden of production shifts to defendant to rebut the presumption of discrimination." *Sorensen*, 984 F.2d at 352 (Citations omitted). However, the burden shifts *only* if the plaintiff makes out a *prima facie* case. *Drake v. City of Ft. Collins, Colo.*, 927 F.2d 1156, 1161 (10th Cir.1991). If the burdens shifts, the defendant must set forth, through the introduction of admissible evidence, reasons for its action which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action. If the defendant does so, the presumption raised by the *prima facie* case is rebutted and drops from the case. The plaintiff must then prove by a preponderance of the evidence that the employer's proffered reason was a mere pretext for unlawful discrimination. The plaintiff retains the ultimate burden to show that she has been the victim of unlawful, intentional discrimination. *St. Mary's Honor Center v. Hicks*, 509 U.S. ——, ——, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407, 416 (1993).

The defendant argues Magruder cannot make out a *prima facie* case because the five

---

4. Although there is some suggestion in one of Magruder's memoranda of disparate impact (Doc. 31, p. 6), no such claim is made in the pleadings or in the pretrial order. Magruder expressly pursued only a disparate treatment claim before the ALJ (Recommended Decision, p. 11).

male employees identified by Magruder[5] as having received more lenient treatment for their misconduct are not similarly situated. In *Mitchell v. Toledo Hosp.,* 964 F.2d 577 (6th Cir.1992), the court summarized the principles governing disparate treatment claims like Magruder's:

> It is fundamental that to make a comparison of a discrimination plaintiff's treatment to that of non-minority employees, the plaintiff must show that the "comparables" are similarly-situated *in all respects.* Thus, to be deemed "similarly-situated", the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

*Id.* at 583 (Citations omitted).

The conduct of the five male employees who received Notices of Removal is not in dispute.[6] Charles Hilt received a Notice of Removal on December 21, 1987, for submitting a false travel voucher, failing to follow instructions and obtaining leave under false pretenses. His removal was proposed by Supervisor Barry Rausch, and was settled in the grievance process by Postal Service representative Dan Pierce because of mitigating factors, including Hilt's cooperation, repentant attitude and the confusion and misunderstanding surrounding the travel regulations.

Edward Kinsall received a Notice of Removal on November 17, 1988, for leaving his tour duty without authorization. His removal was proposed by Supervisor Bryan Schultz, and was settled in the grievance process by Postal Service representative Richard Carney because of mitigating factors, including Kinsall's personal situation in caring for an elderly parent, his cooperation, and repayment of unearned wages. Kinsall was a veteran who had rights of appeal to the Merit Systems Protection Board (MSPB).

Gerald Cleary was issued a Notice of Removal on July 2, 1990, for being absent without leave. His removal was proposed by Manager Gerald Crane, and was settled in the grievance process by Postal Service representative John Lancaster in return for Cleary's agreement not to pursue an appeal. Cleary was a veteran who had rights of appeal to the MSPB.

Cyrl Foote was issued a Notice of Removal on August 22, 1991, for engaging in an altercation. His removal was proposed by Jolene McDonnald, and was settled in the grievance process by Postal Service representative Ronald Ealey in return for dismissal of Foote's MSPB appeal.

Jesse Staley was issued a Notice of Removal on August 21, 1991, for engaging in an altercation. His removal was proposed by Supervisor Sharron Shaw, and was settled in the grievance process by Postal Service representative Ronald Ealey because of weaknesses in the Postal Service's case and in return for full settlement of Staley's MSPB appeal.

The court is unable to identify in Magruder's various memoranda a succinct response to defendant's argument that Magruder has failed to make out a *prima facie* case. She has made no effort to discuss or distinguish *Mitchell v. Toledo Hospital, supra.*[7] She has cited no authority which holds, or even suggests, that the principles set out in *Mitchell* are inapplicable, invalid or questionable.

---

**5.** Magruder selected the men based on her own knowledge of other employees "who had done serious acts against the Postal Service...." The men were identified in a letter dated March 9, 1992 from Magruder's lawyer to Thomas Brasser of the Postal Service.

**6.** See Magruder's responses to defendant's statements of Uncontroverted Fact #'s 32–51 set out in Docs. 26 and 31. The facts regarding the five male employees are contained in Postal Service records which were furnished to Magruder's counsel by order of the ALJ and by the affidavit of Thomas B. Brasser, Labor Relations Specialist for the Postal Service. There is no indication that any of the male employees testified by deposition in this case or at any of the administrative proceedings and no contention that additional facts can be, or need to be, developed regarding their respective cases.

**7.** *Mitchell* was cited by the defendants in their memorandum, Doc. 19, p. 18.

Rather, she seems to argue only that there are sufficient inferences from the facts to overcome summary judgment. While she does not specifically identify the inferences, the court will assume she is contending that an inference of the ultimate issue of sex discrimination flows from the facts that the five male employees were not discharged and that she was. This approach is faulty because it does not address the "similarly situated" requirement of a *prima facie* case.

■ The undisputed facts show that Magruder's situation is not comparable to the five male employees. First, Magruder's treatment came at the hands of Sharron Shaw and Manuel Arguello. Shaw proposed the Notice of Removal and Arguello was the final reviewing authority. With the exception of Staley, Shaw had no involvement in the cases of the other allegedly comparable male employees. Staley's case arose *after* Magruder was terminated.

Second, the conduct of the male employees is not similar to forging a supervisor's signature on time records, and then lying about having done so, especially with regard to Foote and Staley, who received Notices of Removal for engaging in physical altercations. Forgery is an act of deceit. Fighting is not. Leaving or being absent from work without authorization is not. While Hilt's conduct of falsifying information on a travel voucher can be roughly analogized to Magruder's conduct because of its dishonest aspects, the means utilized by Hilt are different because Hilt did not attempt to conceal his identity when filling out the travel voucher, nor did he lie about his involvement when confronted.

Third, mitigating circumstances were present in each of the male employees' cases that were not present in Magruder's case. Most significantly, Magruder denied committing the forgery when she was initially interviewed by postal authorities, while Hilt and Kinsall fully cooperated. In addition, four of the five comparable male employees had rights of appeal through the MSPB, while Magruder did not.

The court finds that Magruder cannot show that the five male employees were "similarly situated in all respects." Thus, Magruder cannot make out a *prima facie* case of sex discrimination under Title VII.

■ Assuming, for purposes of argument, that Magruder has made a *prima facie* case, then it is clear that the defendants have met their burden to produce evidence that Magruder's termination was not the result of unlawful sex discrimination. The facts on this prong of the analysis are undisputed: Magruder was recommended for termination because of her admitted falsification of postal records. Her termination was recommended by Sharron Shaw, a woman, who had never made any derogatory comments about Magruder's sex. Ms. Shaw's recommendation was approved by Manuel Arguello, who likewise had never made negative comments about Magruder's sex. These facts, even when viewed in a light most favorable to Magruder, reveal an entirely legitimate reason for her termination and no suggestion that Magruder's sex figured in any way in her termination. Therefore, the defendants have met their burden to show a legitimate, nondiscriminatory reason for Magruder's discharge.

■ The burden now shifts back to Magruder to show that the defendant's reasons were but a pretext for unlawful sex discrimination, i.e. that the proffered reason was not the true reason for the defendant's decision. This burden now merges with the ultimate burden of persuading the court that Magruder has been the victim of intentional discrimination. Magruder may meet this burden directly by showing that sex discrimination actually motivated the defendants, or indirectly by demonstrating that the defendant's reasons are unworthy of belief. In this summary judgment setting, Magruder must raise a genuine factual question as to whether defendant's reasons are pretextual. She may do so by examples of other employees who received disparate treatment. *Drake v. City of Fort Collins,* 927 F.2d at 1160.

The focus thus returns to a consideration of the five male employees. Once again, the facts regarding their cases are not in dispute. The issue boils down to whether, considering the circumstances of Magruder's termination

and those involving the five males, genuine issues of fact remain regarding whether the defendant's decision to terminate Magruder was motivated by an intent to discriminate against Magruder because of her sex.

The court has carefully examined the record in the light most favorable to Magruder. There is no direct evidence that sex discrimination motivated the decision-makers. Neither Shaw nor Arguello had ever made any derogatory comments regarding Magruder's sex so no inference of sex bias can be made based upon their past contact with her. Magruder has not come forward with any facts which suggest that her sex was a factor to Shaw or Arguello during the process which lead to her termination.

Turning to indirect evidence, neither Shaw nor Arguello had been involved in, or were aware of, the disciplinary actions which predated Magruder's, i.e. those involving Hilt, Kinsall and Foote. The mere existence of these cases in Postal Service files, standing alone, is not evidence of disparate sex discrimination in Magruder's case. Intent to discriminate is an element which Magruder must prove, and intent must exist in the mind of someone who took action with respect to Magruder. The court has searched the record for any fact which would tend to show that intent to discriminate on the basis of sex had anything to do with Magruder's termination. The court's inescapable conclusion is that no such evidence of fact exists and that the defendant is entitled to summary judgment on Magruder's Title VII sex discrimination claim.

Magruder also contends that the defendant's handling of her case, when compared to the action taken with respect relative to the five male employees, constituted a separate act of discrimination actionable under Title VII. The defendants respond that another employee's grievance settlement cannot be actionable as a matter of law.

In *Carey v. U.S. Postal Service*, 812 F.2d 621 (10th Cir.1987), the court rejected a similar claim. In *Carey*, the plaintiff, a white male, and Nix, a black male, both worked at the Kansas City Bulk Mail Center. In July, 1980, Nix applied for a position as a "Quality Control Analyst". Although he was rated as one of the five best qualified applicants, the position was given to a white male. Nix filed a race discrimination charge with the EEOC, and a formal EEO hearing was later held. In the meantime, a General Supervisor position became available in December, 1982, and fifteen people, including the plaintiff and Nix, applied to fill the vacancy. After the EEO hearing but before a decision was rendered, the Postal Service and Nix entered into an agreement settling Nix's claim. As part of the settlement, Nix was promoted to the General Supervisor position. The plaintiff filed a Title VII suit, alleging reverse discrimination in the promotion of Nix. He contended the settlement of Nix's charge resulted in discriminatory treatment.

The Tenth Circuit rejected the plaintiff's argument. Relying on the Sixth Circuit's decision in *EEOC v. McCall Printing Corp.*, 633 F.2d 1232 (6th Cir.1980), the court found that to allow settlement to be considered an independent act of discrimination would spark new rounds of litigation, discourage settlement of claims, and place an employer in the untenable position of facing suit by one group of employees if it failed to correct past discrimination, while facing suit by another group of employees if it corrected the past discrimination. *Carey*, 812 F.2d at 625 (Citations omitted).

*Carey* governs our decision in the case at bar. Magruder cannot base a Title VII claim on the settlement of other employees' grievances.[8]

### Rehabilitation Act Claim

Magruder contends the defendant discriminated against her on the basis of her alcoholism. Alcoholism is a handicapping condition within the purview of the Rehabilitation Act. *Fuller v. Frank*, 916 F.2d 558, 561 (9th Cir.1990). In order to make out a *prima facie* case under the Rehabilitation Act, Magruder must establish: (1) that

---

**8.** Magruder does not allege that the settlements of the male employees grievances were made in bad faith.

she suffered from a handicapping condition; (2) that she was qualified for the position in spite of her handicap; and (3) that she was terminated from the position solely because of her handicap. *Gallagher v. Catto,* 778 F.Supp. 570, 577 (D.D.C.1991), *aff'd,* 988 F.2d 1280 (D.C.Cir.1993) (citations omitted).

The defendant argues that Magruder cannot establish that she was terminated from her position solely because of alcoholism. The facts are uncontroverted that neither Shaw nor Arguello had any knowledge of Magruder's alcoholism at the time they made the decision to terminate Magruder. Arguello, the final reviewing official, gave his concurrence to Magruder's removal on January 29, 1991, two days before Magruder first revealed her alcoholism to Postal authorities. Magruder testified at her deposition that she does not believe Arguello had any knowledge of her alcoholism at the time he made his decision.

Magruder argues that there is no factual dispute that the defendant was aware of her alcoholism prior to March 9, 1991. While it is true that Magruder's termination became effective on that date, the decision to terminate her occurred prior to January 31, 1991, the earliest date Magruder can show the defendant had knowledge of her alcoholism. For purposes of ascertaining the defendant's knowledge of Magruder's handicap, the court looks to the date the decision was made to terminate Magruder, not the date her termination became effective.

The defendant also argues that Magruder's actions in forging her supervisor's signature constitute good cause for her termination, independent of her alleged handicap. Defendant relies upon *Richardson v. United States Postal Service,* 613 F.Supp. 1213 (D.C.D.C. 1985), in support of its position. In *Richardson,* the plaintiff was discharged after pleading guilty to an assault and weapon charge. While incarcerated, he was diagnosed as having a deep depression with paranoid tendency and alcoholism. Plaintiff's union filed a grievance on his behalf, which was denied. Plaintiff thereafter filed suit and charged discrimination on the basis of handicap (alcoholism).

The court rejected plaintiff's claim, finding that he had been discharged for his criminal conduct, not because of alcoholism or poor job performance. The court noted that the Rehabilitation Act "does not prohibit an employer from discharging an employee for improper off-duty conduct when the reason for the discharge is the conduct itself, and not any handicap to which the conduct may be related." *Id.* at 1215–16 (Citations omitted).

While the case at bar differs because Magruder's forgery occurred on the job, the reasoning articulated by the *Richardson* court supports the defendant's position. As the court in *Wilber v. Brady,* 780 F.Supp. 837 (D.D.C.1992) remarked, "A disabled individual cannot be 'otherwise qualified' for a position if he commits misconduct which would disqualify an individual who did not fall under the protection of the statute." *Id.* at 840. Magruder committed three separate acts of forgery and lied to postal authorities when first confronted about the incidents. Magruder's misconduct disqualifies her from service and the Rehabilitation Act provides her no remedy.

The court holds that Magruder cannot make out a *prima facie* case under the Rehabilitation Act.

The defendant's motion (Doc. 18) for summary judgment is hereby granted.

IT IS SO ORDERED.