# UNITED STATES COURT OF APPEALS

**Filed 5/7/96**

## TENTH CIRCUIT

---

EMMA MENDEZ QUINONES,

      Plaintiff-Appellant,

v.

BRUCE BABBITT, Secretary of the
Department of the Interior,

      Defendant-Appellee.

No. 95-1107
(D.C. No. 93-M-1285)
(D. of Colo.)

---

## ORDER AND JUDGMENT[*]

---

Before **Anderson, Circuit Judge**, **McWilliams, Senior Circuit Judge**, and **Holmes, District Judge.**[**]

---

Emma Mendez Quinones (Mendez) was employed as an electrical engineer with the

Bureau of Reclamation at the Federal Center in Lakewood, Colorado, from December 15,

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993.  151 F.R.D. 470.

[**] Honorable Sven Erik Holmes, District Judge for the Northern District of Oklahoma, sitting by designation.

1980, until the date of her voluntary transfer to the National Park Service on June 24, 1990. On June 14, 1993, Mendez, then a 47-year-old Hispanic female, brought suit in the United States District Court for the District of Colorado against Bruce Babbitt, the Secretary of the Interior, seeking injunctive relief and damages to redress the alleged deprivation by Babbitt, acting through the Bureau of Reclamation, of rights secured her by the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq.*, as amended by the Civil Rights Act of 1991, and the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* The gist of the complaint was that Mendez, while an employee of the Bureau of Reclamation, had been deprived of her civil rights because of her age, sex, and national origin, and in retaliation for filing complaints with the Equal Employment Opportunity Office of the Bureau of Reclamation (EEO Bureau Office). By answer, Babbitt denied violating any of Mendez' civil rights and alleged various affirmative defenses. Prior to trial, Mendez withdrew her claim of age discrimination as well as her demand for a jury trial.

At trial, the district court denied Babbitt's motion for dismissal at the close of Mendez's case in chief, and directed that the trial proceed to conclusion. The district court then took the case under advisement and later made written, but unpublished, findings of fact and conclusions of law. Basically, the district court found that the evidence did not show any intentional discrimination against Mendez based on either her sex or her national origin. In its findings, the district court spoke as follows:

> After consideration of all of the evidence presented, the
> court finds and concludes that the plaintiff has failed to prove

disparate treatment based on either or both of the plaintiff's protected groups and has failed to prove retaliation for the filing of her initial EEOC complaint of discrimination and her continuing objections to her treatment.

What has been shown is a clash of personalities. Ms. Mendez demonstrated her qualifications as an electrical engineer and there is no doubt of her professional competence to perform the tasks assigned. The difficulty was that her temperament, energy, aggressiveness and ambition produced barriers to her achieving the goals of receiving a quality step increase, development of an expertise in transformers and the matters in which she expressed interest. In this court's view, the failure of successful supervision of the plaintiff by Julson and Nokes did not result from any attitude or treatment prohibited by the civil rights laws.

The key to this case is found in the exhibits containing the exchange of notes between Ms. Mendez and Mr. Julson [her direct supervisor]. They show two people developing an antagonism toward each other that made any effective communication impossible. There is nothing to indicate that this antagonism resulted from the plaintiff's gender or national origin. The second level supervisor, Mr. Nokes, could not handle the problem. His strict, militaristic approach to management was counter-productive in this situation. That management style is not prohibited by the law involved in this case.

Mendez appeals the judgment entered by the district court dismissing her claims with prejudice. On appeal, counsel frames the two issues to be resolved as follows:

First, the plaintiff asserts that the district court either overlooked or ignored credible evidence which was sufficient to support her initial complaint of national origin and sex bias regarding overtime compensation and, likewise, sufficient to overcome any non-discriminatory business reason articulated by defendant pursuant to a *McDonnell Douglas v. Green* analysis of her claims and, this being the case, the district court's findings were clearly erroneous in light of the evidence presented at trial.

Second, the evidence presented at trial was more than sufficient to establish her subsequent claim of retaliation as such evidence clearly established the required causal nexus between her initial Complaint and the subsequent complaints of retaliation for opposing the employment practices of the defendant reasonably believed by her to be unlawful.

Limited background facts are in order. Mendez was born, raised and educated in Puerto Rico. She is an electrical engineer and possesses Bachelor of Science degrees in both mathematics and electrical engineering, and a Master of Science degree in electrical engineering. She taught mathematics at a high school in Puerto Rico and was an Assistant Dean of Engineering at the University of Puerto Rico. She also had previous federal work experience with the Department of Defense in Maryland, and the National Bureau of Standards in Boulder, Colorado.

As indicated, Mendez was employed by the Bureau of Reclamation from 1980 to 1990. From 1980 until 1987, Mendez experienced no particular job-related problems, and in fact received two promotions, including a competitive promotion to the rank of GS-12.[1] However, in early 1988, she began to have problems involving herself and her immediate supervisor, Lee Julson, and her second level supervisor, Vernon Nokes, who had previously been her immediate supervisor. Her initial problem involved a claim for overtime pay allegedly due her in connection with her work on the Snyder Hill/Black Mountain pumping project. Mendez

---

[1] Promotions to GS-12 are based on merit, and not on length of government service. We note parenthetically that while seeking this promotion, Mendez, according to her own testimony, informed Vernon Nokes, her supervisor, that "he better select me for that position or I was going to file discrimination against him."

testified at trial that she and Nokes had agreed that she could work overtime on this particular project up to 10 hours. Mendez continued working overtime, however, and kept a log of her hours. In all, she worked 80 hours and 25 minutes in excess of the 10 hours agreed upon by herself and Nokes. When her request for overtime pay for the excess hours was denied, she filed an informal complaint with the EEO Bureau Office, claiming that others who were similarly situated received pay for overtime that was not authorizd in advance. When her complaint could not be resolved, she filed a formal complaint with the EEO Bureau Office, alleging discrimination based on her sex and national origin. Thereafter, according to her complaint, she was subject to repeated acts of harassment, including reprimands, a suspension and the like, by her supervisors Julson and Nokes in retaliation for filing the discrimination complaint. Mendez did file several additional complaints with the EEO Bureau Office based on harassment occurring as a result of her initial complaint regarding overtime pay. As indicated above, Mendez eventually left the Bureau of Reclamation and transferred to the National Park Service at the same pay grade and at the same rank as she had with the Bureau of Reclamation.

In this appeal, Mendez challenges the trial court's finding that she was not intentionally discriminated against based on her sex and/or national origin. Relying upon *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973), she claims that the trial court erred in finding that she did not meet her burden of presenting evidence to show intentional discrimination. In *Sorensen v. City of Aurora*, 984 F.2d 349 (10th Cir. 1993), a Title VII case, we spoke about the

"shifting burden of proof scheme" set forth in *McDonnell-Douglas* as follows:

> The Supreme Court has cautioned that this shifting burden of proof scheme is only intended to assist in marshalling and presenting relevant evidence. The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. Further, the ultimate question in a Title VII disparate treatment case is whether the defendant intentionally discriminated against the plaintiff. Thus, when such a case is fully tried, as here, we need only consider that ultimate question--whether plaintiff proved that the defendant intentionally discriminated against her. The subsidiary steps in the *McDonnell Douglas* proof scheme become irrelevant.

*Sorensen*, 984 F.2d at 351 (internal quotes and citations omitted).

As indicated, at the conclusion of Mendez' presentation of evidence, Babbitt moved for judgment as a matter of law. Without any argument, the district court simply said: "Denied. Next Witness." Thereafter, defense counsel called eight witnesses and offered the deposition of Lee Julson, which was accepted by the court. The court, after closing arguments, took the matter under advisement and later made written findings and conclusions. Thus, the instant case was "fully tried" and, under *Sorensen*, *supra*, "we need only consider the ultimate question--whether plaintiff proved that the defendant intentionally discriminated against her."

In *Sorensen*, we also held that "[a] finding of intentional discrimination, or a finding of no intentional discrimination, is subject to the clearly erroneous standard of review," and elaborated thereon as follows:

> A finding of fact is clearly erroneous only if it is without factual support in the record, or if the appellate court, after reviewing all the evidence, is left with the definite and firm conviction that a mistake has been made. If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the fact-finder's choice between them cannot be clearly erroneous

*Sorensen*, 984 F.2d at 351 (internal quotes and citations omitted)..

The instant case conceivably presents "two permissible views of the evidence," in which event, under *Sorensen* "the fact-finder's choice between them cannot be clearly erroneous."

Our study of the record, including the trial transcript, convinces us that the district court's findings are a "permissible view of the evidence" and are therefore not clearly erroneous. The district court found that Mendez had failed to prove disparate treatment in connection with her overtime pay claim, and had also failed to prove retaliation for filing that complaint. That there was "a clash of personalties" between Mendez, Julson and Nokes is quite clear, but such does not *compel* a finding that there was intentional discrimination based on sex or national origin. And, of course, the district court is the trier of the facts, and, as such, is not bound to accept testimony at face value. *See, e.g., Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564 (1985). It has a right to even disbelieve a witness. For us to reverse, we would simply be substituting our view of the evidence for that of the district court. Such is not our

prerogative.

Judgment affirmed.

Entered for the Court

Robert H. McWilliams
Senior Circuit Judge