Juanita **BATSON, Latina Bailey, Marjorie Harvey, Tawania Harvey, Valarie Mathis, and Altina Sumter, Plaintiffs,**

v.

Earl A. **POWELL, Director, National Gallery of Art, Defendant.**

No. CIV. A. 94–2225 SSH.

United States District Court, District of Columbia.

Oct. 2, 1998.

Barbara B. Hutchinson, New Carrollton, MD, for Plaintiffs.

AUSA Stacy M. Ludwig, U.S. Attorney's Office, Washington, DC, for Defendant.

## OPINION

STANLEY S. HARRIS, District Judge.

Before the Court are defendant's renewed motion for summary judgment, plaintiffs' opposition thereto, and defendant's reply. Based on the foregoing motions and the entire record, the Court grants defendant's re-

newed motion for summary judgment. "Findings of fact and conclusions of law are unnecessary on decisions of motions under Rule ... 56." Fed.R.Civ.P. 52(a); *Summers v. Department of Justice*, 140 F.3d 1077, 1079–80 (D.C.Cir.1998). Nonetheless, the Court sets forth its reasoning.

## BACKGROUND [1]

Plaintiffs Juanita Batson, Latina Bailey, Marjorie Harvey ("M.Harvey"), Tawania Harvey ("T.Harvey"), Valarie Mathis, and Altina Sumter, were employed or remain employed as security guards at the National Gallery of Art ("NGA") in Washington, D.C. On October 1, 1992, the NGA's Office of Protection Services ("OPS") issued a Uniform Dress Policy ("UDP") requiring each security officer to wear a clean, complete uniform and to maintain a neat and orderly appearance while on duty. The UDP specifically provided, *inter alia*, that hair was to be kept clean, neatly styled, and arranged so that it did not extend over the collar; that a maximum of two earrings per ear or two rings per hand was permissible; and that nose jewelry, dangling earrings, earrings larger than the size of a lead pencil's eraser, openly displayed neck jewelry, excessive facial makeup, unreasonably long fingernails, and decorative nail polish were prohibited.

OPS supervisors began enforcing the UDP approximately three months after it was issued. They inspected their squad's appearance each day prior to public hours. Guards found in violation of the order were counseled, but if the offending guard complied immediately, or on the next day of duty, no further disciplinary action was taken.

Beginning on January 6, 1993, each plaintiff was counseled for violating one or more provisions of the UDP. Unlike other counseled guards, plaintiffs failed immediately or soon after to comply with the UDP requirements. For each successive instance of offending behavior, they were subjected to further disciplinary action, and each plaintiff was formally reprimanded on more than one occasion. All were sent home and charged

---

**1.** A more comprehensive background is set forth in the Court's previous Opinion in this case. *See*

*Batson v. Powell*, 912 F.Supp. 565, 569–70 (D.D.C.1996).

absence without leave. Plaintiffs Batson, Bailey, Mathis, and Sumter were suspended from duty without pay. Batson, M. Harvey, and Mathis ultimately were terminated.[2]

On October 14, 1994, plaintiffs filed suit under 42 U.S.C. § 1981a and Title VII, 42 U.S.C. § 2000e–16 *et seq.,* claiming that (1) the UDP adversely impacted females; (2) defendant treated males differently than plaintiffs; and (3) defendant retaliated against plaintiffs for filing a discrimination complaint. In an Opinion and Order dated January 11, 1996, the Court granted summary judgment in defendant's favor on plaintiffs' disparate impact and retaliation claims. *Batson v. Powell,* 912 F.Supp. 565 (D.D.C. 1996). Accordingly, the only claim remaining is the disparate treatment claim, in which plaintiffs allege that the UDP was applied in an uneven manner, depending on the gender of the guard violating its provisions.

## STANDARD OF REVIEW

Summary judgment may be granted only if the pleadings and evidence "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In considering a summary judgment motion, all evidence and the inferences to be drawn from it must be considered in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Mere allegations in the pleadings, however, are not sufficient to defeat a summary judgment motion; if the moving party shows that there is an absence of evidence to support the nonmoving party's case, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *See* Fed.R.Civ.P. 56(e); *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## DISCUSSION

In evaluating defendant's motion for summary judgment on the remaining disparate treatment claim, the Court utilizes the famil-

iar three-step model of proof set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). First, plaintiffs have the burden of proving a *prima facie* case of gender discrimination. *See id.* 411 U.S. at 802, 93 S.Ct. 1817; *Neuren v. Adduci, Mastriani, Meeks & Schill,* 43 F.3d 1507, 1512 (D.C.Cir.1995). If plaintiffs succeed in establishing a *prima facie* case of discrimination, the burden shifts to defendant to rebut the presumption of discrimination by proffering legitimate, non-discriminatory reasons for the allegedly discriminatory conduct. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817; *Neuren,* 43 F.3d at 1512. Once defendant has proffered its reasons, plaintiffs must come forward with additional evidence tending to show that defendant's asserted legitimate reason was a mere pretext for discrimination. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506–508, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Neuren,* 43 F.3d at 1512.

To make out a *prima facie* case of discrimination based on a disparate treatment theory, plaintiffs must show (1) that defendant treated male guards differently than female guards, and (2) that the male guards who received different treatment were similarly situated to the female guards to whom they are compared. *See Batson,* 912 F.Supp. at 573. To meet the "similarly situated" prong of the *prima facie* case, plaintiffs must demonstrate that "all of the relevant aspects of [their] employment situation[s] were 'nearly identical' to those of the male [guards]." *Neuren,* 43 F.3d at 1514 (quoting *Pierce v. Commonwealth Life Ins. Co.,* 40 F.3d 796, 802 (6th Cir.1994)); *Mungin v. Katten, Muchin & Zavis,* 116 F.3d 1549, 1554 (D.C.Cir. 1997). Defendant contends that plaintiffs have not established a *prima facie* case, and thus that their remaining claim should be dismissed.

■ Plaintiffs cite three types of evidence which they contend establish a *prima facie* case of disparate treatment. First, they claim that they were treated differently from

---

**2.** On December 19, 1994, for reasons unrelated to the instant action, the OPS issued a memoran-

dum to all staff officially rescinding the UDP.

their male counterparts at the NGA because they were told that in order to comply with the "hair" clause of the UDP they would have to cut their hair, but male guards were not given the same order. According to the evidence in the record, however, the only plaintiff who was ever told to cut her hair was plaintiff Sumter.[3] *See* Deposition of Marjorie Harvey Beach 29:6—29:9; Deposition of Juanita Batson 56:24—57:6 (hereinafter "Batson Dep."); Deposition of Valerie Mathis 77:1—77:5; Deposition of Tawania Harvey 135:13—135:19. Moreover, Sumter was told to cut her hair only after she had proved to be unable to comply with the hair policy in any other way. *See* Affidavit of Altina Sumter p. 2 & Attach. B (establishing that Sumter was told to cut her hair on March 30, 1993, after she had been found to be in violation of the hair policy at least five times); Deposition of Altina Sumter 80:8—89:25. Because no male guard was ever found to be in violation of the hair clause on successive occasions, *see* Deposition of James Thompson 222:11—229:7 (hereinafter "Thompson Dep."); Affidavit of James Thompson pp 1–3 (hereinafter "Thompson Aff."), plaintiffs have not established that Sumter was "similarly situated" to these male guards. *See Perkins v. Brigham & Women's Hospital*, 78 F.3d 747, 751 (1st Cir.1996); *Magruder v. Runyon*, 844 F.Supp. 696, 703 (D.Kan.1994), *aff'd*, 54 F.3d 787, 1995 WL 311740 (10th Cir.1995). According-ly, the Court concludes that Sumter's having been told to cut her hair, even if true, is not sufficient to establish a *prima facie* case.

Plaintiffs next contend that defendant's decision to allow a male guard, Willie Wright, to wear his hair in violation of the UDP (by placing his waist-length ponytail inside his coat) indicates that female guards were held to higher standards of compliance with the UDP than male guards. The Court disagrees. As an initial matter, tucking a ponytail into the jacket collar was suggested to plaintiff Batson by a supervisor as a viable option for compliance, but she did not do it because she "thought it was stupid." Batson Dep. 30:2–32:15. Moreover, Wright had a different supervisor and worked a different shift than plaintiffs, *see* Declaration of Daniel E. Miller ¶¶ 4–8 (hereinafter "Miller Decl."); Thompson Dep. 10:8–12:16; Declaration of James Davis ¶¶ 3–6, so plaintiffs have not established that they and Wright were "similarly situated."[4] *See Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997); *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir.1992).

Finally, plaintiffs claim that they have made out a *prima facie* case of disparate treatment because plaintiffs' supervisors observed multiple violations of the UDP by male guards but took no action against these individuals, while plaintiffs were sent home.[5]

---

3. Plaintiff Bailey testified that Deputy Chief Davis told her that he could give her a direct order to cut her hair, but he never did give such an order. Deposition of Latina Bailey 157:18—159:22.

4. Even were the Court to find that Wright's being permitted to wear his hair in violation of the UDP established a *prima facie* case of disparate treatment, defendant would still be entitled to summary judgment because he has provided a legitimate, non-discriminatory reason for this apparent discrepancy. Wright's supervisor attested that he believed that tucking a ponytail into the collar of a jacket did not violate the UDP because the hair did not touch the jacket collar. *See* Miller Decl. ¶ 6. Although this Court has previously held that, contrary to the supervisor's understanding, Wright's hairstyle violated the UDP, *Batson*, 912 F.Supp. at 574, "a mistaken belief can be a legitimate reason for an employment decision and is not necessarily pretextual." *EEOC v. Flasher Co.*, 986 F.2d 1312, 1322 n. 12 (10th Cir.1992); *see also Pollard v. Rea Magnet*

*Wire Co.*, 824 F.2d 557, 559 (7th Cir.) ("A reason honestly described but poorly founded is not a pretext, as that term is used in the law of discrimination."), *cert. denied*, 484 U.S. 977, 108 S.Ct. 488, 98 L.Ed.2d 486 (1987). Accordingly, in order to survive summary judgment plaintiffs had to point to evidence suggesting that defendant's legitimate reason was a pretext for discrimination. *See St. Mary's*, 509 U.S. at 506–508, 113 S.Ct. 2742; *Neuren*, 43 F.3d at 1512. Plaintiffs failed to offer any evidence to meet this requirement.

5. The Court, in its previous Opinion, characterized plaintiffs' disparate impact claim as "whether guards were held to different standards of compliance with the terms of the policy depending on their gender," not "whether defendant discriminated in enforcing the UDP once a particular guard was found to have violated its prohibitions." *Batson*, 912 F.Supp. at 574. Plaintiffs' most recent submissions, however, purport to proffer evidence of both types of disparate

The male guards who allegedly were given preferential treatment by plaintiffs' supervisors, however, were not "similarly situated" to plaintiffs because the men corrected the violations either immediately or the next day, and did not repeat the same violation of the UDP a second time. *See* Thompson Dep. 192:15–193:17; 211:19–212:21; 222:11–229:7; Thompson Aff. pp 1–3. Plaintiffs, on the other hand, repeatedly violated the same UDP provisions (particularly the hair and earring clauses) even after their attention was drawn to the violations. *See, e.g.,* Def's. Mot. To Dis. or S.J. of Feb. 2, 1995, Ex. C (documenting plaintiffs' repeated violations); Thompson Aff. pp. 1–3. Because plaintiffs have not established that "all of the relevant aspects of [their] employment situation[s] were 'nearly identical' to those of" the male guards, they have failed to establish a *prima facie* case of disparate treatment based on the alleged differences in the disciplinary measures used to enforce the UDP. *See Neuren,* 43 F.3d at 1514.

## CONCLUSION

For the foregoing reasons, the Court concludes that plaintiffs have not established a *prima facie* case of disparate treatment. Accordingly, the Court grants defendant's motion for summary judgment on plaintiffs' remaining gender discrimination claim. In accordance with Federal Rule of Civil Procedure 58, an appropriate Judgment accompanies this Opinion.

### *JUDGMENT*

For the reasons stated in the accompanying Opinion, it hereby is

ORDERED, that defendant's renewed motion for summary judgment is granted. It hereby further is

ORDERED, that final judgment is entered in defendant's favor.

SO ORDERED.

treatment. In an abundance of caution, the Court addresses both variations of plaintiffs' disparate treatment claim.