948 F.2d 1144
 57 Fair Empl.Prac.Cas. (BNA) 325,
57 Empl. Prac. Dec. P 41,070
Rolando R. LUNA, Plaintiff-Appellee,
v.
CITY & COUNTY OF DENVER, Department of Public Works,
Stapleton International Airport; Jack W. Brennan, in his
official capacity as Airport Engineer, Stapleton
International Airport; Robert Storck, in his official
capacity as Chief Construction Engineer, Stapleton
International Airport; and William E. Smith, in his
official capacity as Assistant Director of Aviation
(Engineering), Stapleton International Airport, Defendants-Appellants.
 No. 90-1275.
 United States Court of Appeals,
Tenth Circuit.
 Nov. 1, 1991.
 
 George C. Aucoin (Richard Hipp and Patrick W. Johnson, with him on the brief) of Hackethal, McNeill & Aucoin, P.C., Lakewood, Colo., for plaintiff-appellee.
 Geoffrey S. Wasson, Asst. City Atty. (Patricia L. Wells, City Atty., with him on the briefs), Denver, Colo., for defendants-appellants.
 Before McKAY, Chief Circuit Judge, and BARRETT and BRORBY, Circuit Judges.
 BRORBY, Circuit Judge.
 
 
 1
 This appeal arises from the district court's finding that the City and County of Denver unlawfully discriminated against an employee on the basis of his national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.
 
 
 2
 Plaintiff Rolando Luna, a thirteen-year employee with the City and County of Denver, brought suit alleging defendants failed to promote him on the basis of his Asian descent and promoted instead a less qualified Anglo-American. The district court granted defendants' summary judgment motions in an unpublished order dated July 18, 1988, dismissing Luna's civil rights claim under 42 U.S.C. § 1983, and a companion claim under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. The district court also granted defendant's motion for summary judgment on Luna's civil rights claim under 42 U.S.C. § 1981. See Luna v. City & County of Denver, 718 F.Supp. 854 (D.Colo.1989). A two-day bench trial resolved the remaining Title VII discrimination claim in Luna's favor. The trial court ordered defendants to promote Luna to the first available vacancy of Engineer III and to pay Luna the difference between his current salary and Engineer III during the interim. Additionally, the trial court awarded Luna back pay stipulated at $18,642, as well as attorney fees and costs.
 
 
 3
 The City and County of Denver now appeals, claiming Luna failed to present evidence from which the court could find that defendants' legitimate, nondiscriminatory reason for not promoting plaintiff was a pretext for discrimination. Because we find the district court's ultimate finding of intentional discrimination is not clearly erroneous, we affirm.
 
 FACTUAL BACKGROUND
 
 4
 The basic facts are not in dispute. Luna, an American-Filipino of Asian race, was born in the Philippine Islands where he acquired his initial education and eventually received a bachelor of science degree from Feati Institute of Technology in Manila in 1950.
 
 
 5
 Luna later obtained a master of science degree in aeronautical engineering from the University of Notre Dame and a master of business administration degree from St. Louis University. Luna also undertook advanced nondegree courses in structural engineering and mathematics at the University of Washington. He began his professional career in 1958 as an engineer for Boeing Corporation and received two promotions in a five-year period. He became a naturalized citizen of the United States in 1963, and thereafter held a variety of engineering positions. He worked two years as an aeronautical engineer for McDonnell Douglas Aircraft Corporation. He also worked over four years as a civil engineer and consultant for private corporations in the Philippines and the United States, including a six-month assignment to the National Aeronautics and Space Administration's Apollo and Saturn space projects.
 
 
 6
 After receiving high ratings from the Denver Career Services Authority (CSA), a centralized personnel agency that recruits employees for municipal positions, the City of Denver hired Luna in 1972 as a Project Inspector for the Department of Public Works. Throughout his thirteen years with the City and County of Denver, Luna performed a variety of functions. He spent much of his first year evaluating all of the city's bridges and viaducts after receiving specialized technical training from the Federal Highway Administration and Colorado State Highway Commission. Thereafter he served as a Project Engineer I at Stapleton International Airport, evaluating airport facilities, waste and noise pollution, and overseeing a variety of special projects related to airport construction and management. Evidence presented at trial indicated that Luna often performed duties above those normally required of a project engineer. Projects assigned to Luna often required him to utilize his experience in structural, mechanical, electrical, and civil engineering. He was also required to evaluate technical, legal and economic factors affecting certain projects. Luna had an "unblemished record" and consistently maintained an evaluation of "strong or better."
 
 
 7
 This dispute arose in 1985, when CSA announced a vacancy for the position of Engineer III at Stapleton International Airport. The initial job description required a bachelor of science degree in civil engineering from an accredited university or equivalent work experience in civil engineering. The vacancy also required four years' work experience in engineering, as well as registration by the State of Colorado as a professional engineer. Advanced education could substitute for the required work experience. Although the position initially called for two years' experience in airport construction and project management, the city later deleted this requirement to attract additional candidates. At the time, the applicant pool numbered less than the five required for CSA certification.
 
 
 8
 Two city employees--William Shirk, a white male, and plaintiff Luna--were among those who submitted applications. Although Shirk's application was facially deficient for failure to include all required forms detailing his work experience, CSA nonetheless certified him as eligible along with the five highest scoring applicants on its preliminary oral examination. CSA rejected Luna's application, however, on the erroneous assumption that a civil engineer degree was prerequisite for the position. CSA failed to recognize that civil engineering work experience could substitute for the lack of a formal civil engineer degree.
 
 
 9
 Two airport engineers conducted the pre-appointment interviews and hired one male and two females at the Engineer III level, all Caucasian. Shirk was not selected for any of the available slots since he lacked the design engineering experience sought by the department. Shirk had only two years' experience working for the city Public Works Department as an engineer on roads, bridges and related projects. He had no experience in the airport engineering field. Nor did he have the two years' airport construction and project management experience originally sought by Stapleton International Airport.
 
 
 10
 Nevertheless, both hiring engineers believed Shirk was a strong candidate for the construction section of the engineering department and recommended the city create a position for him. The construction supervisor met with Shirk on December 20, 1985, to review his qualifications and discussed the anticipated opening with him on at least two additional occasions. Soon thereafter, the city granted the airport authority to create the additional Engineer III position for the purpose of hiring Shirk.
 
 
 11
 Meanwhile, Luna inquired why CSA found him not qualified for the Engineer III position when he had been certified as eligible for the more stringent Engineer IV slot four years earlier, as well as for airport engineer in 1977 and assistant airport engineer in 1978. He was not hired for any of the three positions. CSA reexamined Luna's record, discovered its processing error on his application, and ultimately certified Luna to the airport hiring authority in January 1986. Neither of the hiring engineers was aware of Luna's application until this date.
 
 
 12
 Since two qualified candidates now existed for the newly-approved Engineer III position, city hiring policy required interviews of both Luna and Shirk. At trial, defendants introduced testimony that had Shirk been the only candidate, he would likely have been awarded the position automatically without an interview.
 
 
 13
 At this juncture, the parties diverge slightly on their recall of the events. However, the district court found that on the evening of February 20, 1986, Luna was told to report to the airport engineer's office the following day but was not aware until he arrived that the meeting was in fact an interview for the Engineer III position. A hiring committee comprised of the two hiring engineers and two other department heads asked Luna a series of questions related to engineering principles, construction management, scheduling, contracts, and correspondence. Luna testified he was totally surprised and felt unfairly treated because he was unable to prepare for the meeting. He also testified that many of the questions asked were unrelated to the skills needed to perform at the Engineer III level.
 
 
 14
 Shirk responded to the identical questions asked of Luna during his interview and the committee found his responses "more appropriate" overall than Luna's. However, the trial court found Shirk had advance notice of the interview schedule. Shirk received the promotion and this suit followed.
 
 
 15
 Defendants conceded at trial, and the district court agreed, that Luna established a prima facie case of employment discrimination on the basis of national origin under Title VII. The evidence presented clearly showed (1) Luna belonged to a racial minority; (2) he applied for and was qualified for a job for which the City and County of Denver sought applicants; (3) despite his qualifications, he was denied promotion; and (4) another employee who was not a member of a protected group was promoted at the time Luna's request was denied. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); Rich v. Martin Marietta Corp., 522 F.2d 333, 345-47 (10th Cir.1975).
 
 
 16
 Once a plaintiff establishes a prima facie case, the burden shifts to the employer to show that it based its promotion decision strictly on a legitimate business consideration and not an illegitimate factor such as race. Furnco Constr. Co. v. Waters, 438 U.S. 567, 577-78, 98 S.Ct. 2943, 2949-50, 57 L.Ed.2d 957 (1978); McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. at 1824. An employer need only "articulate some legitimate, nondiscriminatory reason for the employee's rejection," McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. at 1824, in order for the burden of production to shift back to the employee to show that the offered justification served only as a mere pretext for discrimination. Id. at 804, 93 S.Ct. at 1825.
 
 
 17
 Defendants assert Shirk was better qualified for the position than Luna based solely on their responses to questioning at the interviews. While the trial court found this reason sufficient to meet defendants' burden of production, it nonetheless concluded that the proffered reason was a pretext. The trial court determined defendants possessed a mindset to hire Shirk and the "interview was just simply a ministerial process that they would go through to protect themselves and the city." We are asked to find the trial court's decision clearly erroneous.
 
 DISCUSSION
 
 18
 Defendants argue that Luna failed to present any evidence, direct or circumstantial, from which the trial judge could find that racial discrimination was more likely than not the reason for the city's decision not to promote him. To support their claim, defendants argue that the trial court erroneously equates the defendants' "race conscious-free decision to hire Shirk" in December 1985, as evidence of an intent to discriminate against Luna when the defendants held interviews in February 1986. In short, defendants assert the trial court could not logically find discrimination where defendants made their decision to hire Shirk at a time prior to receiving notice of Luna's eligibility. We disagree with how defendants characterize the trial court's findings and therefore reject the argument.
 
 
 19
 The district court determined defendants had a mindset to hire Shirk prior to the interview. Yet this predisposition to hire Shirk arose only because no other eligible applicants existed prior to the time CSA certified Luna. This mindset cannot be viewed in isolation, however, or as determinative on the issue of defendants' claimed lack of discriminatory intent. Shirk had not yet been offered the job at the time of the February interview and defendants' own witnesses testified unequivocally that their decision to hire Shirk was based solely on the interview itself. As the trial court emphasized, the focus, therefore, is not on the initial desire to hire Shirk back in December, but rather on the ultimate hiring decision made between Luna and Shirk. Simply because defendants were predisposed to hire Shirk does not, by itself, answer the question of why Luna's application received less than fair consideration after CSA certified him as eligible in January 1986. The trial court was clearly disturbed that Luna received no warning of the interview and that the hiring committee never bothered to read Luna's file prior to the meeting. Furthermore, the trial judge found the interview questions "substantially subjective."
 
 
 20
 Simply because "a court may think that the employer misjudged the qualifications of the applicants does not in itself expose him to Title VII liability, although this may be probative of whether the employer's reasons are pretexts for discrimination." Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 259, 101 S.Ct. 1089, 1097, 67 L.Ed.2d 207 (1981).
 
 
 21
 Defendants' mindset is directly relevant to whether their proffered reason for not hiring Luna is mere pretext. Defendants assert they based their employment decision solely on Shirk's performance during the interview and therefore lack the requisite discriminatory intent. Nevertheless, the evidence shows Luna was significantly disadvantaged at the interview by defendants' own acts. The trial court found this incongruency definitive and that defendants' mindset to hire Shirk--"given the discrepancy in the race in this case"--made their articulated reason for bypassing Luna a mere pretext.
 
 
 22
 A plaintiff may succeed in a Title VII action "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Burdine, 450 U.S. at 256, 101 S.Ct. at 1095. It is firmly established that this evidence may "take a variety of forms." Furnco Construction, 438 U.S. at 578, 98 S.Ct. at 2950; McDonnell Douglas, 411 U.S. at 804-805, 93 S.Ct. at 1825-26. In some cases "the plaintiff's initial evidence, combined with effective cross-examination of the defendant, will suffice to discredit the defendant's explanation." Burdine, 450 U.S. at 255 n. 10, 101 S.Ct. at 1095 n. 10. In other situations an aggrieved plaintiff "might be able to prove pretext by showing that the employer has promoted white employees who lack the qualifications the employer relies upon, or by proving the employer's 'general policy and practice with respect to minority employment.' " Patterson v. McLean Credit Union, 491 U.S. 164, 217, 109 S.Ct. 2363, 2394, 105 L.Ed.2d 132 (1989) (Brennan, J., concurring in part, dissenting in part) (quoting McDonnell Douglas, 411 U.S. at 804-805, 93 S.Ct. at 1825).
 
 
 23
 Based on the totality of the circumstances here, the trial court had ample additional evidence upon which to base its decision. It is uncontradicted the airport engineering department employed no racial minorities in the Engineer III position and Luna maintained an exemplary record throughout his thirteen years of service with the city. The trial court also found Shirk "didn't have the same track record that Mr. Luna did. His ... qualifications and credentials ... on paper [going] into this interview were not as good as Mr. Luna's." Luna's tenure as an employee with the city was nearly six times that of Shirk. Luna, unlike Shirk, also had the precise airport construction and project management experience that the airport initially required but later deleted for lack of qualified candidates. Additionally, Luna's application was technically correct, while Shirk's application remained facially deficient throughout the entire application process. While it is true the record is devoid of any evidence regarding the extent of defendants' knowledge of this deficiency, it is nonetheless a fact which the trial court could consider.
 
 
 24
 Defendants, however, equate their decision to hire Shirk to Holder v. City of Raleigh, 867 F.2d 823, 825 (4th Cir.1989), where the court ruled that the city's decision to hire the nephew of a panelist who conducted job interviews, as well as the son of a crew supervisor, rather than a qualified black candidate with greater experience--although distasteful and based on "reasons other than merit"--did not violate Title VII. We find defendants' argument unconvincing. While we agree that Title VII does not "authorize[ ] courts to declare unlawful every arbitrary and unfair employment decision," id., the statute "tolerates no racial discrimination, subtle or otherwise." McDonnell Douglas, 411 U.S. at 801, 93 S.Ct. at 1824. In short, if defendants offer a pretext for why Shirk was selected over Luna, then the trial court "may infer that the employer is trying to conceal a discriminatory reason for its action." Bell v. A.T. & T., 946 F.2d 1507, 1514 (10th Cir.1991).
 
 
 25
 The evidence established here, coupled with the defendants' own concession that Luna established a prima facie case of discrimination, clearly supports the trial court's ruling. It is beyond dispute that once defendants conceded the prima facie case, they conceded there were at least some tenable facts upon which the trial court could base a finding of employment discrimination. While defendants successfully rebutted the legal inference of discrimination that arose out of Luna's prima facie case, the basic facts remain in evidence nevertheless. Accordingly, defendants' additional claim that CSA's nondiscriminatory processing error imputed Title VII liability upon the city by delaying Luna's application until after the airport selected Shirk is without merit.
 
 
 26
 Our decision is guided, in part, by the broad deference afforded to the trial court. We are bound to uphold the trial court's factual findings unless they are clearly erroneous. Fed.R.Civ.P. 52(a). We may not find the trial court's findings "clearly erroneous unless, after a review of the entire record, we are left with the definite and firm conviction that a mistake has been made." Higgins v. State ex rel. Okl. Employment Sec. Comm'n, 642 F.2d 1199, 1202 (10th Cir.1981) (citing Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 123, 89 S.Ct. 1562, 1576, 23 L.Ed.2d 129 (1969)). We are not left with such a conviction in this case.
 
 
 27
 It is not our duty as an appellate court to relitigate an issue to determine if the trial court reached the correct decision. Rather, we are called only to judge "whether it reached a permissible one in light of the evidence." Higgins, 642 F.2d at 1202. Furthermore, " 'the resolution of conflicting evidence and the determination of credibility are matters particularly within the province of the trial judge who heard and observed the demeanor of the witnesses.' " Id. (quoting Dowell v. United States, 553 F.2d 1233, 1235 (10th Cir.1977)). Based on our review of the record, the trial court's finding that the City and County of Denver discriminated against Luna on the basis of his national origin is not clearly erroneous.
 
 
 28
 We are mindful that Title VII does not obligate an employer to extend preferential treatment to a minority where competing candidates possess comparable qualifications. Burdine, 450 U.S. at 259, 101 S.Ct. at 1096; Furnco Construction, 438 U.S. at 577-78, 98 S.Ct. at 2949-50. However, it is incumbent upon an employer to give minority candidates equal and fair consideration, thus insuring that an employment decision is "not based upon unlawful criteria." Burdine, 450 U.S. at 259, 101 S.Ct. at 1097; Furnco Construction, 438 U.S. at 577-78, 98 S.Ct. at 2949-50. Such was not the case here.
 
 
 29
 AFFIRMED.