**Salvador A. RIVERA, Plaintiff,**

v.

**Arthur LEVITT, Chairman, United States Securities and Exchange Commission, Defendant.**

Nos. CIV. A. 95 N 317, CIV. A. 97 N 751.

United States District Court, D. Colorado.

Jan. 3, 2000.

## ORDER AND MEMORANDUM
## OF DECISION

NOTTINGHAM, District Judge.

This is an employment-discrimination case. Plaintiff Salvador Rivera, an Hispanic male, alleges that his supervisors at the Securities and Exchange Commission ("SEC") violated title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §§ 2000e to 2000e–17 (West 1994), *as amended by* the Civil Rights Act of 1991, 42 U.S.C.A. § 1981a (West 1994) [hereinafter "title VII"], by (1) discriminating against him because of his national origin and race, and (2) retaliating against him for complaining about the discrimination to the SEC's Equal Opportunity Office [hereinafter "EEO"]. This is plaintiff's second lawsuit against defendant relating to alleged employment discrimination. This matter is before the court on: (1) "Defendant Arthur Levitt's Motion for Summary Judgment" filed June 16, 1999; and (2) "Defendant's Motion to Strike" filed on August 2, 1999. Jurisdiction is based on 28 U.S.C.A. § 1331 (West 1993) and 42 U.S.C.A. § 2000e–5(f).

### FACTS

### 1. Plaintiff's Work History

In 1986, plaintiff was hired as a staff attorney in the Central Regional Office ("CRO") of the SEC in Denver, Colorado. (Br. in Supp. of Def. Arthur Levitt's Mot. for Summ. J., Statement of Undisputed Facts ¶¶ 1–2 [filed June 16, 1999] [hereinafter "Def.'s Br."]; *admitted at* Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., Resp. to Statement of Undisputed Facts ¶¶ 1–2 [filed July 20, 1999] [hereinafter "Pl.'s Resp."].) On February 7, 1992, plaintiff filed the first of his six formal EEO complaints, complaint number SEC–06–92, against the SEC, complaining about his 1991 performance evaluation. (*Id.,* Statement of Undisputed Facts ¶ 3; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 3.) In addition, plaintiff also claims that prior to filing his first formal complaint, he filed an informal complaint, apparently also with the EEO, concerning his 1991 performance evaluation. (Pl.'s Resp., Ex. A [Pl.'s Aff. ¶ 13].) Plaintiff alleges that shortly after he filed the informal complaint, Robert Davenport, regional director of the CRO, told him in a threatening tone that if he continued to pursue this complaint, "he would be watched closely." (*Id.,* Ex. A [Pl.'s Aff. ¶ 14].) On July 22, 1992, the parties settled plaintiff's formal discrimination complaint through a written agreement. (Def.'s Br., Statement of Undisputed Facts ¶ 3; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 3.)

In May 1992, plaintiff mailed four letters typed on SEC letterhead in which he solicited donations from Colorado Hispanic Bar Association members in connection with the campaign of Roger Candelaria, another Hispanic attorney, for a district attorney position in southern Colorado. (Pl.'s Resp., Ex. A [Pl.'s Aff. ¶ 15].) John Kelly, CRO associate regional administrator, learned that plaintiff had sent the letters and notified James Clarkson, director of regional office operations for the SEC in Washington, D.C. (*See* Order and Mem. of Decision at 3 [filed Feb. 26, 1996] [hereinafter "February 26, 1996, Order"].) Clarkson, in turn, immediately contacted the SEC's Inspector General's Office ("OIG") which investigated the incident and concluded that plaintiff had violated the Hatch Act, 5 U.S.C.A. §§ 7321–7326 (West 1996 & Supp.1999).[1] (*Id.*) The OIG then referred the matter to the Office of Special Counsel ("OSC"). (*Id.*)

On September 24, 1992, plaintiff filed his second EEO complaint, complaint number SEC–14–92, alleging discrimination because of the SEC's investigation of plaintiff for Hatch Act violations. (Def.'s Br., Statement of Undisputed Facts ¶ 4; *admitted at* Pl.'s Resp., Resp. to Statement

---

1. The Hatch Act regulates federal employees' participation in political activities. *See* 5 U.S.C.A. §§ 7323–7326.

of Undisputed Facts ¶ 4.) On January 23, 1993, the OSC filed a complaint against plaintiff with the Merit Systems Protection Board ("MSPB"), in which it charged plaintiff with two counts of violating the Hatch Act. (*See* Feb. 26, 1996, Order at 4.) On June 23, 1993, MSPB administrative law judge ("ALJ") Edward J. Reidy recommended that plaintiff be removed from his position with the SEC. (Def.'s Br., Statement of Undisputed Facts ¶ 5; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 5.) On April 1, 1994, the MSPB adopted the ALJ's finding that plaintiff had violated the Hatch Act, but suspended plaintiff for sixty days instead of terminating him. (*Id.*, Statement of Undisputed Facts ¶ 5; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 5.)

On September 26, 1994, plaintiff filed his third EEO complaint, complaint number SEC–55–94, alleging that his 1994 annual performance evaluation was downgraded from previous evaluation ratings of "Exceeds Fully Successful" to "Fully Satisfactory" because of his race, color, and national origin, and in retaliation for his previous EEO activity. (*Id.*, Statement of Undisputed Facts ¶ 6; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 6.) On February 13, 1995, plaintiff was placed on a performance improvement plan ("Improvement Plan") by Office of Enforcement Branch Chief Donald C. Beagle and Assistant Regional Director Fred Chavez. (*Id.*, Statement of Undisputed Facts ¶ 6; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 6.) According to defendant, the impetus for placing plaintiff on the Improvement Plan was his failure to meet minimum performance standards in three critical job elements: (1) written skills; (2) investigations; and (3) professional judgment and development. (*Id.*, Ex. 5 [Performance Improvement Plan at 1].) Under the terms of the Improvement Plan, plaintiff had 120 days in which to improve his performance in these areas—at which time his performance would be re-evaluated using the established performance standards in the plan—or else face the possibility of remedial action. (*Id.*, Ex. 5 [Performance Improvement Plan at 7].)

On September 18, 1995, plaintiff filed his fourth complaint with the EEO, complaint number SEC–62–95, alleging that the unsuccessful ratings he received at the conclusion of the Improvement Plan were based on his national origin and in retaliation for his previous EEO activity. (*Id.*, Statement of Undisputed Facts ¶ 8; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 8.) According to the complaint:

> On June 27, 1995, the Complainant received a report entitled "Demonstrated Performance During Improvement Period" ("Demonstrated Performance"). In that report, Messrs. Fusfeld and Kelly rated Complainant unsatisfactory in his [Improvement Plan] in two critical areas of his performance standards (investigation and professional judgment) and rated him minimally satisfactory in a third critical area (writing)....

> On or about June 27, 1995[,] Messrs. Jack Kelly and Fred Chavez rated Mr. Rivera unsatisfactory in all four critical areas of the performance standards in his Annual Performance Summary and Rating ....

(*Id.*, Ex. 6 [EEO Complaint SEC–62–95 at 2].) On February 22, 1996, plaintiff filed his fifth complaint with the EEO, complaint number SEC–13–96, alleging, *inter alia,* that: (1) Davenport ordered other SEC employees to watch plaintiff closely; (2) SEC officials kept detailed surveillance records of plaintiff and his activities; and (3) Davenport "tapped or bugged" plaintiff's office computer to gain access to plaintiff's confidential material regarding his EEO complaints. (*Id.*, Ex. 7 [EEO Complaint SEC–13–96 at 2].) Like the previous complaints, plaintiff alleges that the SEC's surveillance of him was based on his nation origin and in retaliation for his earlier EEO complaints. (*Id.*, Statement of Undisputed Facts ¶ 9; *admitted at* Pl.'s

Resp., Resp. to Statement of Undisputed Facts ¶ 9.)

On April 25, 1996, Executive Director James McConnell notified plaintiff of the SEC's proposed decision to remove plaintiff from his position as a staff attorney effective April 29, 1996. (*Id.,* Statement of Undisputed Facts ¶ 10; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 10.) On May 20, 1996, plaintiff filed a complaint with the MSPB, alleging that (1) the SEC unfairly applied its job standards to plaintiff, and (2) failed to consider plaintiff for a transfer to a new position. (*Id.,* Statement of Undisputed Facts ¶ 10; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 10.) On July 1, 1996, plaintiff filed his sixth and final complaint with the EEO, complaint number SEC–31–96, alleging that he was denied a reduced work week and discharged from the SEC because of his previous EEO activity and national origin. (*Id.,* Statement of Undisputed Facts ¶ 11; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 11.)

On July 18, 1996, the EEO dismissed complaint number SEC–31–96 because plaintiff previously filed an appeal with the MSPB.[2] (*Id.,* Statement of Undisputed Facts ¶ 13; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 13.) Likewise, on October 3, 1996, the EEO dismissed complaint numbers SEC–13–96 and SEC–62–95 because it determined that the MSPB had jurisdiction over all related issues that led to plaintiff's dismissal. (*Id.,* Statement of Undisputed Facts ¶ 14; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 14.) On September 19, 1996, an administrative hearing was held on plaintiff's MSBP complaint before ALJ Jack E. Salyer. (*Id.,* Statement of Undisputed Facts ¶ 15; *admitted at* Pl.'s

Resp., Resp. to Statement of Undisputed Facts ¶ 15.) On February 7, 1997, the ALJ issued his decision, finding that: (1) the SEC met its burden of proof with regard to the performance issues raised in plaintiff's complaint; (2) plaintiff failed to demonstrate that, in being removed from his position, he was discriminated against on the basis of his national origin; and (3) plaintiff failed to demonstrate by a preponderance of the evidence that the SEC's removal of plaintiff was based on reprisal against him for filing a discrimination complaint. (*Id.,* Statement of Undisputed Facts ¶ 15; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 15.)

## 2. Procedural History

As noted earlier, this is plaintiff's second lawsuit against defendant stemming from alleged employment discrimination. On February 9, 1995, plaintiff filed his first complaint with this court (the "1995 lawsuit"), asserting title VII discrimination claims for (1) disparate treatment on the basis of nation origin, and (2) retaliation for filing EEO complaints. (*See* Compl. [filed Feb. 9, 1995].) Specifically, plaintiff alleged that CRO management retaliated against him for filing EEO complaints by reporting him to investigatory authorities in connection with his violation of the Hatch Act. (*Id.*) On November 13, 1995, defendant moved for summary judgment on plaintiff's claims. On February 26, 1996, I granted defendant's motion in part, dismissing plaintiff's disparate-treatment claims. (*See* Feb. 26, 1996, Order at 32.) Thus, only plaintiff's retaliation claims remain unresolved.

On April 14, 1997, plaintiff filed his second complaint in this court (the "1997 lawsuit"), again alleging title VII claims for (1)

---

**2.** Specifically, the EEO rejected plaintiff's complaint pursuant to 29 C.F.R. § 1614.302(b) (1996) which states "[a]n aggrieved person may initially file a mixed case complaint with an agency pursuant to this part or an appeal on the same matter with the MSPB pursuant to 5 C.F.R. § 1201.151, but not both." (*Id.,* Ex. 11 [Notice of Rejection,

SEC Complaint No. 31–96 at 2].) Thus, since plaintiff filed his MSBP complaint on May 20, 1996, some six weeks prior to filing this EEO complaint, the EEO found that plaintiff elected to have this matter decided by the MSPB. (*Id.,* Ex. 11 [Notice of Rejection, SEC Complaint No. 31–96 at 2].)

disparate treatment on the basis of national origin, and (2) retaliation for filing EEO complaints. (*See* Compl. ¶ 1 [filed Apr. 14, 1997].) In addition to containing many of the same allegations which formed the basis of his 1995 lawsuit—*i.e.* the retaliative conduct of reporting plaintiff's violation of the Hatch Act—plaintiff's 1997 lawsuit also includes new allegations of disparate treatment and retaliatory discrimination relating to his 1994 job performance rating, placement on the Improvement Plan, and dismissal from the SEC. (*Id.* ¶¶ 17–23, 34.) Plaintiff's 1997 lawsuit also alleges that the MSPB erred in finding in favor of defendant at the September 19, 1996, hearing on plaintiff's MSPB complaint.

On May 19, 1997, plaintiff filed a motion to consolidate his cases against defendant, pursuant to rule 42(a) of the Federal Rules of Civil Procedure, on the ground that the cases involve common questions of law and fact. (Mot. to Consolidate and for a Jury Trial on All of Plaintiff's Claims [filed May 19, 1997].) On March, 25, 1999, in open court, I granted plaintiff's motion and ordered these cases consolidated. (*See* Courtroom Minutes [Mar. 25, 1999].) On June 16, 1999, defendant moved for summary judgment on plaintiff's claims arguing that: (1) the MSPB's findings with respect to plaintiff's nondiscrimination claims were not arbitrary and capricious; (2) plaintiff's disparate treatment fail because plaintiff has no evidence that he was treated differently than similarly situated non-minorities; and (3) plaintiff's retaliation claims fail because defendant had legitimate business reasons for the actions it took with respect to plaintiff. (Def. Arthur Levitt's Mot. for Summ. J. [filed June 16, 1999].)

## ANALYSIS

### 1. Legal Standard

Pursuant to rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the ... moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Concrete Works of Colorado, Inc. v. Denver, City & County,* 36 F.3d 1513, 1517 (10th Cir.1994). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp.,* 477 U.S. at 325, 106 S.Ct. at 2554. "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works, Inc.,* 36 F.3d at 1518 (citing *Celotex Corp.,* 477 U.S. at 325, 106 S.Ct. at 2554). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. at 2553; *see* Fed.R.Civ.P. 56(e). The court may consider only admissible evidence when ruling on a summary judgment motion. *See World of Sleep, Inc. v. La-Z-Boy Chair Co.,* 756 F.2d 1467, 1474 (10th Cir.1985). The factual record must be viewed in the light most favorable to the nonmoving party. *Concrete Works, Inc.,* 36 F.3d at 1518 (citing *Applied Genetics Int'l, Inc. v. First Affiliated Securities, Inc.,* 912 F.2d 1238, 1241 [10th Cir.1990] ).

### 2. Review of Plaintiff's Nondiscrimination Claims Before the MSPB

In his appeal to the MSPB, plaintiff argued that he was improperly removed from federal service for both discriminatory and nondiscriminatory reasons. Where a party before the MSPB seeks judicial review of an MSBP decision involving both discrimination and nondiscrimination claims, it is considered a "mixed" case. *See Williams v. Rice,* 983 F.2d 177, 179 (10th Cir.1993). With respect to the discrimination claim, the relevant federal statute provides that the aggrieved employee "shall have the right to trial ... *de novo* by the reviewing court." 5 U.S.C.A.

§ 7703(c) (West 1996) (emphasis supplied); *Williams,* 983 F.2d at 179. Nondiscrimination claims, however, are reviewed on the administrative record. *Williams,* 983 F.2d at 179 (citing *Hayes v. United States Gov't Printing Office,* 684 F.2d 137, 141 [D.C.Cir.1982] ). Generally, pursuant to 5 U.S.C.A. § 7703(b)(1), the Federal Circuit has exclusive jurisdiction over appeals from the MSPB, except where, as here, the complaint is a mixed complaint. *See* 5 U.S.C.A. § 7703(b)(2); *see also Williams,* 983 F.2d at 180 (citations omitted).

■] Plaintiff argues that the ALJ erred in finding that the SEC properly terminated plaintiff for performance-based reasons. (Pl.'s Resp. at 8–11.) A MSPB decision on a nondiscrimination claim, such as this one, must be upheld unless the reviewing court determines that the MSPB's decision was: (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence. 5 U.S.C.A. § 7703(c). The reviewing court " 'may not substitute its own judgment for that of the MSPB.' " *Williams,* 983 F.2d at 180 (quoting *Wilder v. Prokop,* 846 F.2d 613, 619 [10th Cir. 1988].) " 'Under the arbitrary and capricious standard the MSBP's decision needs only to have a rational basis in law.' " *Id.* (quoting *Wilder,* 846 F.2d at 620).

■ In order for an administrative agency to remove an employee for an unacceptable performance rating the agency must: (1) establish a performance appraisal plan approved by the Office of Personnel Management ("OPM"); (2) communicate the written performance standards and "critical elements" of the employee's job to the employee at the beginning of the appraisal period; (3) warn the employee of inadequate performance in these "critical elements"; and (4) counsel and afford the employee an opportunity for improvement after proper notice. *See, e.g., Martin v. Federal Aviation Admin.,* 795 F.2d 995, 997 (C.A.Fed.1986); *Lovshin v. Department of the Navy,* 767 F.2d 826, 834 (Fed.

Cir.1985). To sustain a performance-based removal of an employee, the agency must demonstrate by substantial evidence that it complied with these requirements. 5 U.S.C.A. § 7701(c)(1)(A). In his February 7, 1997, ruling, the ALJ found that the SEC carried its burden on all of these requirements. (Def.'s Br., Ex. 14 [MSPB ALJ's Initial Decision at 5–14].)

Contesting the ALJ's findings, plaintiff argues that the SEC did not follow proper procedures before it removed him from federal service. Specifically, plaintiff argues that: (1) the SEC's performance appraisal system, which was changed in 1993, was not approved by the OPM; (2) the SEC did not clearly communicate its expected performance standards to plaintiff; (3) the SEC failed to warn plaintiff when his performance was unsatisfactory; and (4) the SEC failed to provided plaintiff with counseling or a legitimate opportunity to improve his performance. (Pl.'s Resp. at 8–11.) As an initial matter, I do not address plaintiff's third and fourth arguments because plaintiff fails to allege any error on the part of the ALJ. Also, the evidence before the court leaves room for no doubt that the third and fourth requirements were met.

■ As to plaintiff's first argument, he maintains that the ALJ had no reliable evidence that the OPM approved the 1993 changes in the SEC's performance system. (*Id.* at 9.) I disagree. In his decision, the ALJ relied on a January 6, 1993, letter from the OPM to SEC Associate Executive Director John Innocenti expressly approving the SEC's revised performance appraisal plan. (Def.'s Br., Ex. 14 [MSPB ALJ's Initial Decision at 6].) Having reviewed the letter, I agree with the ALJ that this letter constitutes "substantial evidence" that the OPM approved the SEC's appraisal system. Likewise, I also agree with the ALJ's finding that the SEC communicated its expected performance standards under the Improvement Plan to plaintiff. On this point, plaintiff contends that the ALJ erred by not allowing plain-

tiff to present evidence concerning other attorneys who were disciplined less severely than plaintiff for conduct similar to plaintiff's. I reject this argument because it is wholly irrelevant to the issue of whether defendant provided plaintiff with written performance standards at the beginning of the Improvement Plan.

Plaintiff next contends that the ALJ abused his discretion by not permitting plaintiff to present evidence of: (1) the SEC's prior discrimination and retaliation against him; (2) the bias of his supervisors; and (3) the lack of competency of Kelly, plaintiff's supervisor, in plaintiff's challenge to the SEC's performance-based removal of him. (Pl.'s Resp. at 11–12.) I disagree with all of plaintiff's assertions. Plaintiff's first two points relate to his discrimination claims and thus are irrelevant to his nondiscrimination claim that the SEC failed to follow proper procedure in removing him. Plaintiff's alleged third point of error relates to his argument that the SEC did not provide him with a legitimate opportunity to improve his performance. (*Id.* at 12.) The ALJ found this argument "wholly without merit," and so do I. Moreover, my review of the administrative record reveals that the ALJ did allow plaintiff to produce evidence of Kelly's supervisory competence, but rejected plaintiff's evidence and contentions as "incredible" in light of other, more persuasive, evidence. (Def.'s Br., Ex. 14 [MSPB ALJ's Initial Decision at 9].)

In sum, I find no reason, legal or factual, to diverge from the ALJ's well-reasoned conclusion that the SEC met its evidentiary burden in discharging plaintiff for performance-based reasons. Accordingly, I affirm the MSBP's decision and grant defendant's motion for summary judgment as it relates to plaintiff's nondiscriminatory claims for his discharge. To the extent plaintiff contends that the ALJ erred in finding that plaintiff's removal was based on his national origin or in retaliation for his EEO activity, I address these issues below in my discussion of plaintiff's title VII claims.

### 3. Plaintiff's Title VII Employment–Discrimination Claims

#### a. Disparate Treatment

 Section 2000e–16(a) of title VII provides that "[a]ll personnel actions affecting employees or applicants for employment ... in executive agencies ... shall be made free from any discrimination based on national origin." 42 U.S.C.A. § 2000e–16(a). In order to state a valid claim under title VII, plaintiff must prove by a preponderance of the evidence that defendant engaged in intentional discrimination. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 508, 113 S.Ct. 2742, 2747–48, 125 L.Ed.2d 407 (1993). Plaintiff may satisfy the burden of persuasion by producing (1) direct evidence of defendant's discriminatory motive, or (2) indirect evidence of discrimination through the series of shifting evidentiary burdens described by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 255–56, 101 S.Ct. 1089, 1094–95, 67 L.Ed.2d 207 (1981); *Elmore v. Capstan, Inc.,* 58 F.3d 525, 529 (10th Cir. 1995). Because he offers no direct evidence of discrimination, plaintiff must present sufficient indirect evidence in order to avoid the entry of summary judgment in defendant's favor. *See id.*

 Under the three-stage *McDonnell Douglas* analysis, plaintiff must first establish a *prima facie* case of discrimination based on his race or national origin. *See Hooks,* 997 F.2d at 796; *Elmore,* 58 F.3d at 529–30; *Luna v. City & County of Denver,* 948 F.2d 1144, 1147 (10th Cir. 1991). In the second stage, if plaintiff proves the *prima facie* requirements for a title VII claim, the burden of production shifts to defendant to articulate, though not necessarily prove, a legitimate, nondiscriminatory reason for the challenged action. *See McDonnell Douglas,* 411 U.S. at 802–03, 93 S.Ct. at 1824; *Hooks,* 997 F.2d at 796; *Elmore,* 58 F.3d at 530; *Luna,* 948

F.2d at 1147. If defendant articulates a proper basis for its conduct, the burden shifts back to plaintiff in the third stage of the analysis to prove that defendant's proffered reasons were simply a pretext for illegal discrimination. *See McDonnell Douglas,* 411 U.S. at 804–05, 93 S.Ct. at 1825; *Hooks,* 997 F.2d at 796; *Elmore,* 58 F.3d at 530; *Luna,* 948 F.2d at 1147. Notwithstanding the shifting burden of production, plaintiff retains the ultimate burden of proving that "the employment decision was the result of intentional discrimination based on an impermissible motive." *Martin v. Nannie and the Newborns, Inc.,* 3 F.3d 1410, 1417 (10th Cir. 1993) (citing *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095); *see St. Mary's Honor Ctr.,* 113 S.Ct. at 2747; *Hooks,* 997 F.2d at 797. It must be remembered, however, that "[t]he burden of establishing a *prima facie* case of disparate treatment is not onerous." *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1094. "Disparate treatment occurs where 'the employer simply treats some people less favorably than others' because of their [national origin or color]." *Ortega v. Safeway Stores, Inc.,* 943 F.2d 1230, 1236 (10th Cir.1991) (citations omitted).

██ Plaintiff claims that CRO supervisors discriminated against him for violating work rules by: (1) "illegally" placing him on probation in 1989 in contravention of OPM rules; (2) reporting to investigatory authorities their suspicions that plaintiff had violated the Hatch Act; (3) placing plaintiff on probation (the Improvement Plan) in 1995 as a result of an unsatisfactory job performance rating in 1994; and (4) terminating plaintiff's employment. (Pl.'s Resp. at 14.) In order to establish a *prima facie* case of employment discrimination in connection with discipline for violation of a work rule, plaintiff must demonstrate that: (1) he is a member of a class of persons protected by title VII; (2) he was disciplined or discharged for violating a work rule; and (3) similarly situated, non-minority employees were disciplined less severely or treated differently than he. *See Aramburu v. Boeing Co.,* 112 F.3d 1398, 1403 (10th Cir.1997); *Elmore,*

58 F.3d at 530; *EEOC v. Flasher,* 986 F.2d 1312, 1316 (10th Cir.1992). Defendant concedes the first two elements of plaintiff's *prima facie* case, but maintains that plaintiff has not produced evidence that the SEC treated him differently than non-Hispanic employees who violated comparable work rules or who received poor performance ratings.

██ Before addressing defendant's argument, I note that plaintiff's first two claims—that he was placed on probation in 1989 and reported to investigatory authorities for his violation of the Hatch Act—are subject to the preclusion doctrine of *res judicata.* "Under *res judicata,* or claim preclusion, a final judgment on the merits of an action precludes the parties from relitigating issues that were or could have been raised in the prior action." *Northern Natural Gas Co. v. Grounds,* 931 F.2d 678, 681 (10th Cir.1991). *Res judicata* operates to preclude a claim where the following criteria are satisfied: (1) there has been a final judgment on the merits in an action before a court of competent jurisdiction; (2) the claim is identical to a claim which was previously litigated or could have been litigated in that action; and (3) the parties are either the same or in privity with those in the former litigation. *Id.* at 682; *Lowell Staats Mining Co. v. Philadelphia Elec. Co.,* 878 F.2d 1271, 1278–79 (10th Cir. 1989). Here, *res judicata* operates to preclude plaintiff from relitigating his first two claims for disparate treatment because they are identical to the disparate-treatment claims he raised or could have raised in his 1995 lawsuit against defendant. Furthermore, my February 26, 1996, Order granting summary judgment on these claims constituted a final judgment on the merits, such that plaintiff cannot now collaterally attack my findings by re-alleging these claims in the 1997 lawsuit. *See Griego v. Padilla (In re Griego),* 64 F.3d 580, 584 (10th Cir.1995) (holding under New Mexico law summary judgment acted as final judgment); *Dicken v. Ashcroft,* 972 F.2d 231, 233 n. 5 (8th Cir.1992) ("It is well

established that summary judgment is a final judgment on the merits for purposes of *res judicata*."); *Dowd v. Society of St. Columbans*, 861 F.2d 761, 764 (1st Cir. 1988) ("Summary judgment constitutes a final judgment on the merits for purposes of applying *res judicata*."); *Adkins v. Allstate Ins. Co.*, 729 F.2d 974, 976 n. 3 (4th Cir.1984) ("For purposes of *res judicata*, a summary judgment has always been considered a final disposition on the merits.").[3]

 Regarding plaintiff's third and fourth claims—that he was placed on the Improvement Plan in 1995 and terminated in 1996—the only evidence plaintiff submits is his own affidavit in which he states that other non-Hispanics committed similar work violations, but were not disciplined or placed on improvement plans. (Pl.'s Resp., Ex. A [Pl.'s Aff. ¶¶ 26–28].) The contents of plaintiff's affidavit, however, are not necessarily rendered admissible or probative simply by inclusion in an affidavit. To the contrary, "[t]o survive summary judgment, [plaintiff's] affidavit must be based on personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient." *Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir.

1995); Fed.R.Civ.P. 56(e). After reviewing plaintiff's affidavit, I find that plaintiff has not presented any admissible evidence of non-Hispanic employees who were treated differently than plaintiff for violating work rules. Specifically, I find that paragraphs twenty six through twenty eight of plaintiff's affidavit, which attempt to demonstrate that non-Hispanic employees were disciplined less severely than plaintiff, are conclusory, self-serving, and so wholly lacking in foundation that they are inadmissible under the Federal Rules of Evidence.[4] *See, e.g.*, Fed.R.Evid. 602.

Plaintiff further contends in his affidavit that he was "a significantly better attorney than Mr. Jay Calvarese." (Pl.'s Resp., Ex. A [Pl.'s Aff. ¶ 40].) Plaintiff devotes several paragraphs of his affidavit to describing Mr. Calvarese's alleged shortcomings, but these paragraphs suffer from the same evidentiary infirmities as the ones cited above. (*Id.*, Ex. A [Pl.'s Aff. ¶¶ 41–43].) Moreover, even assuming that plaintiff's allegations concerning Mr. Calvarese are admissible, plaintiff's affidavit fails to establish that Mr. Calvarese was situated similarly to plaintiff.[5] This omission is fatal to plaintiff's ability to establish a *prima facie* case of employment discrimi-

3. Even assuming that the preclusion doctrine does not apply, plaintiff has failed to produce any new admissible evidence which would warrant a reconsideration of my original decision. For example, in my February 26, 1996, Order, I struck portions of plaintiff's affidavits regarding defendant's placement of plaintiff on probation in 1989 because plaintiff's statements lacked foundation and constituted inadmissible opinion testimony. (Feb. 26, 1996, Order at 8.) Plaintiff's current affidavit, while admittedly more detailed, merely restates his earlier opinions without offering evidence to support those opinions. (Pl.'s Resp., Ex. A. [Pl.'s Aff. ¶ 11].) Likewise, with respect to plaintiff's Hatch Act claim, plaintiff merely restates allegations that I either struck from his first affidavit or found were not comparable in severity to plaintiff's Hatch Act violation. (*Compare* Feb. 26, 1996, Order at 11–13, 24–26, *with* Pl.'s Resp., Ex. A [Pl.'s Aff. ¶ 20].) Because I decline to revisit these claims, I need not address defendant's motion to strike.

4. For example, in paragraph twenty-seven, plaintiff states that he has: (1) been to a staff meeting where SEC supervisors discussed with the staff similar problems with other employees; (2) seen SEC monthly reports concerning these problems; and (3) seen letters mailed by other SEC attorneys to clients represented by counsel. (Pl.'s Resp., Ex. A [Pl.'s Aff. ¶ 27].) Plaintiff concludes that, based on these observations, he has personal knowledge of other non-Hispanic SEC attorneys who were disciplined less severely than he for the same work rule violations. (*Id.*) Plaintiff's conclusion, however, is inadmissible because plaintiff has failed to lay a proper foundation for the documents that purport to form the basis of opinion. Furthermore, the statements and documents upon which plaintiff relies are hearsay. *See* Fed.R.Evid. 801.

5. Plaintiff's affidavit also fails to establish that Mr. Calvarese was non-Hispanic. But for my review of the MSPB hearing transcript, there would be no evidence of Mr. Calvarese's race before this court.

nation. Defendant, therefore, is entitled to summary judgment on plaintiff's disparate-treatment claims.

### b. Retaliation—Prima Facie Case

Plaintiff argues that defendant engaged in several instances of retaliatory conduct based on plaintiff's continual filing of EEO complaints. Specifically, plaintiff asserts that defendant retaliated against him when defendant: (1) referred plaintiff to investigatory authorities for his violation of the Hatch Act shortly after Davenport told plaintiff that he would be watched "very closely" if he continued to pursue his 1991 EEO complaint; (2) downgraded plaintiff's performance rating for the period of July 1, 1993, through April 1994, from "Exceeds Fully Successful" to "Fully Satisfactory" after plaintiff filed his second EEO complaint; (3) placed plaintiff on the Improvement Plan on February 13, 1995, for allegedly unsatisfactory performance and then rated his performance at the end of the Improvement Plan "unsatisfactory" in two critical area after plaintiff filed his third EEO complaint; (4) placed plaintiff under surveillance after he filed his fourth EEO complaint; and (5) denied plaintiff a reduced work week and terminated him shortly after he filed his fifth complaint.[6] (*Id.* 18–19.) Plaintiff argues that defendant's retaliatory motive regarding all of these actions is directly evidenced by Davenport's early 1992 statement to plaintiff that he would be watched "very closely" if he continued to pursue his informal discrimination complaint filed in December 1991. (Pl.'s Resp. at 20.) In my February 26, 1996, Order, I found this argument without merit. (*See* Feb. 26, 1996, at 29.) Plaintiff has provided no reason for me to reassess that finding. Thus, I conclude that plaintiff has not established direct evidence of retaliation.

 Where there is no direct evidence of retaliation, the shifting burdens approach applied to title VII claim is also applicable to retaliation claims. *Sorensen v. City of Aurora*, 984 F.2d 349, 353 (10th Cir.1993). In order to establish a *prima facie* case of retaliation, plaintiff must show that: (1) he engaged in a protected opposition to Title VII discrimination or participated in a Title VII proceeding; (2) he suffered an adverse employment action contemporaneous with or subsequent to such opposition or participation; and (3) there is a causal connection between the protected activity and the adverse employment action. *Cole v. Ruidoso Municipal Schools*, 43 F.3d 1373, 1381 (10th Cir. 1994); *Daniel v. Loveridge*, 32 F.3d 1472, 1475 (10th Cir.1994). Defendant does not dispute that plaintiff has satisfied the first element of *prima facie* case. Rather, defendant argues that plaintiff has not satisfied the remaining two elements. (Def.'s Br. at 12–13.) Because defendant raises different objections regarding each EEO complaint, I address each complaint individually.

### i. February 7, 1992, Complaint—SEC–06–92

This complaint was the subject of plaintiff's 1995 lawsuit retaliation claim in which I held that plaintiff had presented sufficient evidence to withstand summary judgment. (Feb. 26, 1996, Order at 29–32.) I specifically held that there was a genuine issue of material fact as to whether defendant's reporting of plaintiff for violating the Hatch Act was in retaliation for plaintiff's filing of this complaint. Defendant does not contest this finding, so I see no need to revisit this issue.

### ii. September 24, 1992, Complaint—SEC–14–92

 Plaintiff argues that defendant retaliated against him for filing this complaint by lowering his job performance rating from "Exceeds Fully Satisfactory" to "Fully Satisfactory" for the rating peri-

---

6. Plaintiff does not allege any retaliatory conduct with respect to his sixth complaint, SEC– 31–96, which was filed after his termination.

od of July 1, 1993, through April 1994. Defendant argues that this reduction in plaintiff's performance rating does not constitute an adverse employment action cognizable under title VII. I agree. Although the Tenth Circuit defines the phrase "adverse employment action liberally," *see Sanchez v. Denver Public Schools.*, 164 F.3d 527, 532 (10th Cir.1998) (internal quotations omitted), an employer's words or decision is not universally actionable just because the employee dislikes or disagrees with it, *Fortner v. Kansas*, 934 F.Supp. 1252, 1267, (D.Kan.1996), *aff'd sub nom., Fortner v. Rueger*, 122 F.3d 40 (10th Cir. 1997). Thus, under Tenth Circuit precedent, where, as here, a supervisor gives an employee a performance review that was lower than previous reviews but still within the range of satisfactory, the employee has not suffered an adverse employment action. *See Meredith v. Beech Aircraft Corp.*, 18 F.3d 890, 896 (10th Cir.1994). Accordingly, defendant is entitled to summary judgment on plaintiff's retaliation claim to the extent it is based on plaintiff's September 24, 1992, complaint to the EEO.

### iii. September 26, 1994, Complaint— SEC–55–94

█ Plaintiff alleges that his placement on the Improvement Plan on February 13, 1995, was in retaliation for filing complaint number SEC–55–94. Like the previous complaint, defendant argues that placing plaintiff on the Improvement Plan does not constitute an adverse employment action. I disagree. Unlike a slight reduction in a performance rating, I find that placing plaintiff on the Improvement Plan, which allowed defendant to remove plaintiff from his position if his performance did not meet minimum requirements under the plan, affected the terms and conditions of plaintiff's employment, and thus, amounted to an adverse employment action. *Fortner*, 934 F.Supp. at 1267.

█ With respect to the third element of plaintiff's *prima facie* case, plaintiff relies upon the temporal proximity between the filing of complaint number SEC–55–94

and his subsequent placement on the Improvement Plan as evidence of a causal connection between his protected conduct and the adverse employment action. (Pl.'s Resp. at 19.) It is well settled that the temporary proximity of an adverse employment action to protected activity may permit an employee to the meet the causal requirement and establish a *prima facie* case of retaliation. *See Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1395 (10th Cir.1997); *Candelaria v. EG & G Energy Measurements, Inc.*, 33 F.3d 1259, 1261–62 (10th Cir.1994) ("[R]etaliatory motive can be inferred from the fact that an adverse employment action follows charges by an employee against his/her employer."). A timing-based inference "can only be made, however, where 'close temporal proximity' exists between the bringing of charges and the subsequent adverse action." *Candelaria*, 33 F.3d at 1262 (quoting *Smith v. Maschner*, 899 F.2d 940, 948–49 [10th Cir. 1990] ). Applying this rule, the Tenth Circuit has concluded that a two-day lapse can support an inference of causal connection. *See Sauers v. Salt Lake County*, 1 F.3d 1122, 1128 (10th Cir.1993). In contrast, the Tenth Circuit has held that a period of three or four months or more between the protected activity and the adverse action generally is insufficient by itself to support an inference of causation. *See Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir.1997) (finding three months insufficient to raise causation inference); *Conner*, 121 F.3d at 1395 (holding four months insufficient to support inference of causation); *but see Ramirez v. Oklahoma Dep't of Mental Health*, 41 F.3d 584, 596 (10th Cir.1994) (holding evidence of adverse employment actions a month and a half after engaging in protected activity was circumstantial evidence of retaliation).

█ Here, it is undisputed that nearly five months elapsed between the time plaintiff filed his EEO complaint and his placement on the Improvement Plan. Thus, under well-settled Tenth Circuit precedent, plaintiff cannot rely solely on the

temporal proximity between engaging in the protected activity and the adverse employment action to establish an inference of causation. Rather, plaintiff must produce "additional evidence beyond mere temporal proximity" in order to sustain his retaliation claim. *Conner*, 121 F.3d at 1395. Plaintiff has not advanced, nor does my review of the record reveal, additional evidence that would support an inference of retaliation.

Furthermore, despite the Tenth Circuit's admonition that the "close temporal proximity" requirement must not be read too restrictively where there is a pattern of retaliatory conduct that begins shortly after engaging in protected activity, plaintiff has failed to produce evidence of a pattern of discriminatory acts that would justify relaxing the temporal requirement. *See Marx v. Schnuck Markets Inc.*, 76 F.3d 324, 329 (10th Cir.1996) (finding a pattern where defendant began citing plaintiff for job deficiencies within one month of plaintiff's reporting of federal labor law violation and continued for three months culminating in a demotion eleven months later). Indeed, plaintiff's entire retaliation claim rests on Davenport's statement that plaintiff would be "closely watched" which was made three years prior to placing plaintiff on the Improvement Plan. There is no evidence in the record, other than plaintiff's conclusory statements, which supports an inference that plaintiff was subject to an on-going pattern of discrimination prior to defendant's decision to place plaintiff on the Improvement Plan. Consequently, defendant is entitled to summary judgment on plaintiff's retaliation claim to the extent it is based on placing plaintiff on the Improvement Plan.

### iv. September 18, 1995, Complaint— SEC–62–95

■ Plaintiff alleges that after filing this EEO complaint, SEC managers retaliated against plaintiff by placing him under constant surveillance. (Pl.'s Resp. at 2, 19.) This claim, like many of plaintiff's other claims, fails because plaintiff has not provided any admissible evidence to support his allegations. The only evidence plaintiff submits is his own affidavit in which he states that he was placed under surveillance because Davenport had threatened to watch him closely if he pursued a previous EEO complaint. (*Id.*, Ex. A [Pl.'s Aff. ¶ 21].) The only support for this conclusion is contained in paragraph twenty-two of plaintiff's affidavit, which states in relevant part: "[m]y supervisors have helped Mr. Davenport carry out his threat [to watch plaintiff closely]. I requested (in a previous discovery request) and I have seen copies of records that Mr. Kelly and Mr. Chavez, two SEC supervisors kept on my activities at the SEC." (*Id.*, Ex. A [Pl.'s Aff. ¶ 22].) I find that this paragraph is inadmissible because plaintiff has failed to lay the proper foundation regarding the admissibility of these documents that form the sole basis of his opinion. *See* Fed.R.Evid. 602, 701. Specifically, plaintiff has neither identified nor produced these documents which purport to establish that plaintiff was subject to a clandestine surveillance operation orchestrated by Davenport and carried out by his minions. Thus, when stripped of these inadmissible statements, plaintiff's affidavit contains nothing more than self-serving, conclusory statements which are insufficient to withstand a motion for summary judgment. *See Medina v. City & County of Denver*, 960 F.2d 1493, 1500 (10th Cir. 1992).

### v. February 22, 1996, Complaint— SEC–13–96

■ Plaintiff argues that defendant retaliated against him after he filed complaint number SEC–13–96 when it (1) denied plaintiff's request for a reduced work week, and (2) subsequently terminated him on April 29, 1996. (Pl.'s Resp. at 2, 19.) Defendant concedes that plaintiff's termination constitutes an adverse employment action but argues that there is no causal connection between plaintiff's termination and his participation in protected activity. (Def.'s Br. at 12.) I disagree. While it is certainly a close call, plaintiff's termination

two months after he filed complaint number SEC–13–96 is in close enough temporal proximity to support an inference of causation. *Compare Ramirez*, 41 F.3d at 596 (holding evidence of adverse employment actions a month and a half after engaging in protected activity was circumstantial evidence of retaliation), *with Richmond*, 120 F.3d at 209 (holding three months insufficient to raise inference of causation). Thus, I conclude that plaintiff has established a *prima facie* case of retaliation.

### c. Retaliation—Pretext

As plaintiff has made a *prima facie* showing of discrimination, the burden shifts to defendant articulate a legitimate, nondiscriminatory reason for its action. *Sorensen*, 984 F.2d at 353. Defendant asserts that it terminated plaintiff because of (1) his unsatisfactory performance under the Improvement Plan, and (2) his violation of an ethical rule when he directly contacted a represented witness. (Def.'s Br. at 10–12, Ex. 15 [Decl. of Daniel Shea].) I find that defendant has met its burden of articulating a legitimate, nondiscriminatory reason for terminating plaintiff. Hence, the burden shifts back to plaintiff to present evidence suggesting that defendant's reasons are a pretext for illegal discrimination. *Sorensen*, 984 F.2d at 353.

Plaintiff argues that defendant's proffered reasons for removing him from federal service are pretextual based on plaintiff's testimony that Davenport told him he would be "watched closely" if he continued to pursue his 1991 informal discrimination complaint. (pl.'s Resp. at 20.) I find this argument to be without merit. Although Davenport's statement that plaintiff would be watched closely supports a finding of pretext with respect to plaintiff's Hatch Act retaliation claim, the rationale underlying that finding does not support a similar finding that plaintiff's termination was a pretext for illegal discrimination. Indeed, in my February 26, 1996, Order, I found that, because Kelly was a close associate and subordinate of

Davenport's, there was an issue of fact regarding whether defendant's proffered reasons for reporting plaintiff's Hatch Act violation were pretext. (*See* Feb. 26, 1996, Order at 31–32.) The same is not true here. The decision to terminate plaintiff was made by James McConnell based on the recommendation of Daniel Shea. (*See* Def.'s Br., Ex. 8 [Memorandum from McConnell to Rivera of 4/25/96 at 1].) Shea did not arrive at the CRO until 1995, three years after Davenport made his comment to plaintiff, and there is no evidence to suggest that Shea shared Davenport's alleged animus toward plaintiff. To the contrary, instead of recommending plaintiff's dismissal immediately after plaintiff's unsatisfactory performance under the Improvement Plan, the record demonstrates that Shea attempted to help plaintiff salvage his career by providing plaintiff with less complex assignments. (*Id.*, Ex. 15 [Decl. of Daniel Shea ¶ 6].) Moreover, there is no evidence suggesting that McConnell's decision to remove plaintiff was based on anything other than plaintiff's inadequate job performance.

Plaintiff also argues that defendant's proffered explanations for plaintiff's termination are unworthy of belief because: (1) other SEC employees were not referred to the OIG for violations of work rules and policies; (2) plaintiff's job performance with regard to the Country World memorandum was deemed satisfactory in June 1994, but later downgraded to unsatisfactory in December 1994; and (3) the temporal proximity between the plaintiff's filing of his EEO complaints and the subsequent adverse actions. (Pl.'s Resp. at 19–20.) I find these arguments unpersuasive. As discussed earlier, with regard to plaintiff's first argument, he has failed to produce evidence that other employees committed work rule violations of comparable severity to plaintiff's that would require referral to the OIG. As to plaintiff's second argument, the only evidence plaintiff offers is his subjective belief that his poor performance rating was a pretext for intentional discrimination. (*See id.*, Ex. A [Pl.'s Aff.

¶ 23].) This is insufficient to preclude summary judgment. *Aramburu,* 112 F.3d at 1408 n. 7. Finally, as to plaintiff's third contention, a showing of temporal proximity alone will not defeat summary judgment where, as here, plaintiff fails to produce other evidence of retaliatory motive or pretext to rebut defendant's proffered non-retaliatory reasons for terminating him. *See Conner,* 121 F.3d at 1398.

In sum, I conclude that plaintiff has not presented sufficient evidence from which a reasonable juror could conclude that defendant's performance-based reasons for removing plaintiff from federal service were pretext for intentional discrimination. Accordingly, defendant is entitled to summary judgment. Plaintiff's retaliation claims are hereby dismissed.

*4. Conclusion*

Based on the foregoing, it is therefore

ORDERED as follows:

1. Defendant's motion for summary judgment (# 75) is GRANTED.

2. Defendant's motion to strike portions of plaintiff's affidavit (# 84) is DENIED as moot.

3. The court will hold a final pretrial conference on the sole surviving claim in these cases at 4:30 o'clock p.m. on February 11, 2000, in courtroom C–201. The parties will follow my Hearing, Conference, and Trial Procedures in preparing for the conference.